**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**July 9, 2018**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

MICHELLE RENEE LAMB, a/k/a
Thomas Lamb,

      Plaintiff - Appellant,

v.

JOE NORWOOD; JOHNNIE
GODDARD; PAUL CORBIER;
KANSAS DEPARTMENT OF
CORRECTIONS; CORIZON
HEALTH SERVICES,

      Defendants - Appellees.

No. 17-3171

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:16-CV-03077-EFM-DJW)**

_____

Submitted on the briefs[*]:

Michelle Renee Lamb a/k/a Thomas Lamb, pro se.

Dwight R. Carswell, Assistant Solicitor General, Bryan C. Clark, Assistant
Solicitor General, and Rachael D. Longhofer, Assistant Attorney General,
Office of Attorney General for the State of Kansas, Topeka, Kansas, for
Defendants–Appellees Joe Norwood, Johnnie Goddard, and the Kansas
Department of Corrections; Casey L. Walker and Trevin Erik Wray,

_____

[*]    The parties have not requested oral argument, and it would not
materially aid our consideration of the appeal. *See* Fed. R. App. P.
34(a)(2)(C); 10th Cir. R. 34.1(G). Thus, we have decided the appeal based
on the briefs.

Simpson, Logback, Lynch, Norris, P.A., Overland Park, Kansas, for Defendant–Appellee Paul Corbier; and Jeffrey T. Donoho and Roger W. Slead, Horn Aylward & Bandy, LLC, Kansas City, Missouri, for Defendant–Appellee Corizon Health Services.

_____

Before **BACHARACH**, **McKAY**, and **BALDOCK**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

Michelle Renee Lamb was born a male. From a young age, however, Michelle displayed feminine characteristics and identified as a female. Michelle is now in state prison and is experiencing gender dysphoria. For this condition, she is receiving medical treatment, though she claims that the treatment is so poor that it violates the Eighth Amendment. For this claim, Michelle must show that prison officials have acted with deliberate indifference to her gender dysphoria.[1]

The undisputed evidence shows that Michelle is receiving hormone treatment, testosterone-blocking medication, and weekly counseling sessions. A 1986 precedent, *Supre v. Ricketts*, 752 F.2d 958 (10th Cir. 1986), suggests that these forms of treatment would preclude liability for an Eighth Amendment violation. Based partly on this precedent, the district court granted summary judgment to the prison

_____

[1]     *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

2

officials. Michelle challenges the grant of summary judgment, and we affirm.

## 1.    What is gender dysphoria and how is it treated?

To address Michelle's appeal, we must consider what gender dysphoria is and consider the available forms of treatment. The term "[g]ender dysphoria describes the psychological distress caused by identifying with the sex opposite to the one assigned at birth."[2] Treatment forms currently include

- [c]hanges in gender expression and role (which may involve living part time or full time in another gender role, consistent with one's gender identity);

- [h]ormone therapy to feminize or masculinize the body;

- [s]urgery to change primary and/or secondary sex characteristics (e.g., breasts/chest, external and/or internal genitalia, facial features, body contouring);

- [p]sychotherapy (individual, family, or group) for purposes such as exploring gender identity, role, and expression; addressing the negative impact of gender dysphoria and stigma on mental health; alleviating internalized transphobia; enhancing social and peer support; improving body image; and promoting resilience.[3]

---

[2]    Sven C. Mueller, et al., *Transgender Research in the 21st Century: A Selective Critical Review from a Neurocognitive Perspective*, 174 Am. J. Psychiatry 1155, 1155 (2017).

[3]    E. Coleman et al., *Standards of Care for the Health of Transsexual, Transgender, & Gender-Nonconforming People, Version 7*, 13 Int'l J.

(continued)

## 2.  What are the applicable legal tests?

To determine whether the prison's treatment for Michelle's gender dysphoria was constitutionally adequate, we consider the constitutional test, the standard for summary judgment, and our standard of review.

The Eighth Amendment prohibits officials from acting with deliberate indifference to a prisoner's serious medical need.[4] The seriousness of Michelle's medical need is uncontested for purposes of summary judgment. Thus, the only substantive issue is whether the existing treatment constituted deliberate indifference to Michelle's gender dysphoria.

This issue arose in summary judgment proceedings. To obtain summary judgment, the prison officials needed to show the absence of a genuine dispute of material fact and their entitlement to judgment as a matter of law.[5] In considering the district court's application of the summary judgment test, we engage in de novo review.[6]

---

Transgenderism 165, 171 (2011); *see* R., Doc. 43-1 (Decl. of Dr. Randi C. Ettner at 5–6 ¶ 23).

[4]    *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

[5]    Fed. R. Civ. P. 56(a).

[6]    *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 643 (10th Cir.), *cert. denied*, 138 S. Ct. 364 (2017).

### 3. What does our 1986 precedent say?

As noted above, we addressed a similar issue in 1986, when we issued *Supre v. Ricketts*, 792 F.2d 958 (10th Cir. 1986).[7] There an inmate with gender dysphoria claimed violation of the Eighth Amendment based on a refusal to provide estrogen therapy. We concluded that the treatment did not violate the Eighth Amendment, reasoning that the state's department of corrections had made an informed judgment about treatment options in the face of disagreement within the medical community.[8]

### 4. Do subsequent medical advances render *Supre* obsolete?

Strictly speaking, *Supre* does not answer our question. There the claim involved denial of estrogen therapy, and Michelle is not complaining about a lack of estrogen therapy. She wants other forms of treatment, including greater doses of hormones and authorization for surgery. But if the Eighth Amendment was not violated by the denial of estrogen therapy, it stands to reason that Michelle's current treatment methods do not constitute deliberate indifference.

Michelle's rejoinder is that *Supre* is too old to provide guidance because it rested on outdated medical assumptions. As Michelle points out,

---

[7]     Less than two months before issuance of the opinion in *Supre*, Michelle lost a similar suit on summary judgment. *Lamb v. Maschner*, 633 F. Supp. 351 (D. Kan. 1986).

[8]     *Supre*, 792 F.2d at 963.

science has advanced since 1986, resulting in new forms of treatment for gender dysphoria.[9] With the availability of these new treatment forms, we must ask: Do scientific advances in treating gender dysphoria render our 1986 precedent obsolete? We think not. Panels in our court are typically bound by precedents issued by other panels,[10] and we typically do not reconsider the medical assumptions underlying our precedents.[11]

But even if we were to reconsider our earlier medical assumptions, *Supre* would continue to provide our analytical framework. As noted above, *Supre* addressed an inmate's unsuccessful effort to obtain estrogen therapy, with the Court concluding that the inmate had not proven deliberate indifference through conflicting medical opinions as to the need for estrogen therapy.[12]

---

[9] *See* Tim C. van de Grift et al., *Surgical Satisfaction, Quality of Life, & Their Association After Gender-Affirming Surgery: A Follow-Up Study*, 44 J. of Sex & Marital Therapy 138, 139 (2018) ("In the past decades, (surgical) care for people diagnosed with gender dysphoria is increasingly provided in specialized, interdisciplinary health-care facilities following the Standards of Care.")

[10] *See White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017).

[11] *See Alexander v. Whitman*, 114 F.3d 1392, 1401 (3d Cir. 1997) ("[N]o advance in technology or science can authorize us to depart from well established legal precedent."); *see also Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 860 (1992) (plurality opinion) (stating that advances in maternal and neonatal health care had not affected the validity of *Roe v. Wade*'s central holding).

[12] *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).

Michelle does not complain about a lack of estrogen therapy. Instead, she wants surgery and an increase in her dosage of hormones. But the summary judgment record does not contain any evidence suggesting that these are suitable treatment options for Michelle. And there is no governing medical consensus on the appropriateness of the treatment options that Michelle is requesting.[13] Thus, even if we were to reconsider *Supre*'s assumptions, its analytical framework would govern here.

5. **Does the existing treatment of Michelle constitute deliberate indifference?**

Under this analytical framework, we have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.[14] These holdings apply here because Michelle is obtaining psychological counseling and hormone treatments, including estrogen and testosterone-blocking medication. Though prison officials have not

---

[13]    *See* Jameson Rammell, *Polarizing Procedures: Transsexual Inmates, Sex Reassignment Surgery, and the Eighth Amendment*, 50 J. Marshall L. Rev. 747, 785 (2017) (stating that sex reassignment surgery "is a unique procedure that has proven difficult to study, and the understanding of its overall effectiveness and long-term ramifications is limited"); E. Coleman et al., *Standards of Care for the Health of Transsexual, Transgender, & Gender-Nonconforming People, Version 7*, 13 Int'l J. Transgenderism 165, 187 (2011) ("Hormone therapy must be individualized based on a patient's goals, the risk/benefit ratio of medications, the presence of other medical conditions, and consideration of social and economic issues.").

[14]    *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

authorized surgery or the hormone dosages that Michelle wants, the existing treatment precludes a reasonable fact-finder from inferring deliberate indifference.

Paul Corbier, M.D. stated under oath that Michelle's existing treatment has proven beneficial and that surgery is impractical and unnecessary in light of the availability and effectiveness of more conservative therapies. Though Michelle disagrees with Dr. Corbier's opinion, the disagreement alone cannot create a reasonable inference of deliberate indifference. And even if Dr. Corbier had been wrong, prison officials could not have been deliberately indifferent by implementing the course of treatment recommended by a licensed medical doctor like Dr. Corbier.[15]

Michelle questions Dr. Corbier's opinion based on a case in Tax Court, *O'Donnabhain v. Commissioner of Internal Revenue*, 134 T.C. 34 (T.C. 2010). There the Tax Court held that expenses for hormone therapy and sex reassignment surgery constituted expenses for medical care, triggering a deduction under the Tax Code.[16] But Tax Court opinions do not

---

[15]     *See Kosilek v. Spencer*, 774 F.3d 63, 91 (1st Cir. 2014) (stating that even if sex reassignment surgery were the only medically adequate treatment for gender identity disorder, an Eighth Amendment violation would have taken place only if prison officials knew or should have known this fact and failed to appropriately respond).

[16]     134 T.C. at 77.

bind our court. And *O'Donnabhain* bears little relevance to our issue because the prison officials have not questioned the medical nature of hormone therapy or sex reassignment surgery. Instead, the prison officials contend only that they could not have been deliberately indifferent by providing hormone therapy and psychological counseling.

In our view, the summary judgment record precludes a reasonable fact-finder from inferring deliberate indifference.

## 6.     Did the district court erroneously restrict discovery?

Michelle also raises procedural challenges involving discovery. These challenges stem from the district court's order for an investigative report.

Under the Prison Litigation Reform Act, the district court had to screen the amended complaint to determine whether it was frivolous, malicious, failed to state a claim on which relief could be granted, or triggered the defendants' immunities from monetary relief.[17] To facilitate this screening process, district courts in our circuit frequently require investigative reports and stay discovery until the filing of these reports.

The district court followed this process here, requiring an investigative report and staying discovery until the report was filed. Prison officials filed the report and sought summary judgment at the same time.

---

[17]     28 U.S.C. §§ 1915(e)(2)(B), 1915A(a)–(b); 42 U.S.C. § 1997e(c)(1).

9

With the filing of the report, the stay automatically terminated and Michelle was free to conduct discovery.

One month later, the defendants moved to stay further discovery until the district court ruled on the summary judgment motion. The motion for a stay remained pending for roughly six months. During this period, Michelle was free to conduct discovery. But she apparently thought that the defendants' motion for a stay automatically curtailed discovery. It didn't.

Michelle also seems to have misunderstood the impact of the investigative report. The report concluded that Michelle's treatment was acceptable; Michelle disagreed and moved for an order requiring prison officials to supplement the report with additional documentation. The district court overruled this motion, and Michelle challenges this ruling.

We have little reason to question the ruling. The investigative report's function was to facilitate the district court's screening process.[18] And on screening, the district court allowed the action to proceed.

When the defendants moved for summary judgment, the investigative report served as the equivalent of an affidavit supporting the summary

---

[18]    *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts order the [investigative] report not to provide discovery, but to aid in screening the complaint.").

judgment motion.[19] To rebut the investigative report, Michelle was free to present her own evidence, including her own affidavit and material obtained through discovery. Michelle did not need supplementation of the investigative report to obtain such material. As a result, the district court did not err in overruling Michelle's motion to require supplementation of the investigative report.

**7.    Conclusion**

We conclude that no genuine issue of material fact exists. In light of the prison's treatment for Michelle's gender dysphoria, no reasonable fact-finder could infer deliberate indifference on the part of prison officials. And the district court did not improperly curtail Michelle's opportunity to conduct discovery. Thus, we affirm the award of summary judgment to the prison officials.

Judge Baldock concurs in the judgment only.

---

[19]    *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (stating that investigative reports are treated like affidavits when filed as evidence supporting summary judgment motions).