**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————————

KENNETH R. ZARTNER,

     Plaintiff - Appellant,

v.

SHAWN L. MILLER,

     Defendant - Appellee.

No. 17-1355
(D.C. No. 1:15-CV-02218-PAB-KLM)
(D. Colo.)

———————————————————

**ORDER AND JUDGMENT**[*]

———————————————————

Before **BRISCOE**, **BACHARACH**, and **CARSON**, Circuit Judges.

———————————————————

This appeal grew out of Officer Shawn Miller's handcuffing of Mr.

Kenneth Zartner during an arrest. In the aftermath, Mr. Zartner sued

Officer Miller under 42 U.S.C. § 1983, claiming excessive force by making

the handcuffs too tight.[1] Officer Miller moved for summary judgment based

on qualified immunity, and the district court granted the motion.

---

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); Tenth Cir. R. 32.1(A).

[1]    Mr. Zartner also sued the City and County of Denver, a jail nurse, and six deputy sheriffs. But this appeal involves only Mr. Zartner's § 1983 claim against Officer Miller for the allegedly tight handcuffs.

We affirm because Mr. Zartner did not present adequate evidence of a causal link between the allegedly tight handcuffs and an actual injury. Without adequate evidence of a causal link, Mr. Zartner cannot prevail against Officer Miller.

**I.  Mr. Zartner was diagnosed with a fracture in his right wrist after two separate uses of force.**

Officer Miller arrested Mr. Zartner for aggravated theft of a motor vehicle, handcuffing him in the process of making the arrest. Mr. Zartner was then taken to a detention center, where he was examined by medical staff. During the examination, no injuries were reported or observed.

The next day, Mr. Zartner was to be fingerprinted. He refused to cooperate, so a group of deputy sheriffs forced Mr. Zartner to give his fingerprints, using nunchucks to apply pressure to his wrists.

Mr. Zartner was then reexamined by a nurse. The nurse asked Mr. Zartner whether he was hurting, but he didn't respond and the nurse again observed no injuries.

Later that day, Mr. Zartner complained about wrist pain, leading to an examination of his wrists and the taking of x-rays. From the x-rays, Dr. David Symonds diagnosed Mr. Zartner with a fracture in his right wrist.

**II.  When reviewing the grant of summary judgment, we engage in de novo review.**

We review de novo a district court's grant of a motion for summary judgment. *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). The

2

motion must be granted if the moving party shows that (1) the parties do not genuinely dispute any material facts and (2) the moving party is entitled to judgment as a matter of law based on those facts. Fed. R. Civ. P. 56(a). When applying this standard, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in this party's favor. *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1259 (10th Cir. 2018).

We must apply this standard in the context of qualified immunity, which shields officers from civil damages if their conduct does not violate a clearly established right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). Once an officer asserts qualified immunity, the plaintiff must

- allege facts showing that the officer violated a constitutional right and

- identify case law showing that this right was clearly established when the officer acted.

*See Schwartz*, 702 F.3d at 579.

In this circuit, unduly tight handcuffing can constitute excessive force under the Fourth and Fourteenth Amendments. *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc). To trigger liability for unduly tight handcuffs, however, the plaintiff must show

3

- an actual injury,[2]

- a causal link between this injury and the unduly tight handcuffs,[3] and

- the officer's knowledge that the handcuffs were too tight.[4]

## III. The district court concluded that there was no constitutional violation based on two independent grounds.

The district court granted summary judgment to Officer Miller based on qualified immunity, concluding that Mr. Zartner had failed to show a violation of his constitutional rights. This conclusion rested on two independent grounds:

1. Mr. Zartner had failed to show a causal link between the allegedly tight handcuffs and an actual injury.

2. Mr. Zartner had failed to show that Officer Miller knew that the handcuffs were too tight.

Because the district court gave two independent rationales, Mr. Zartner can prevail on appeal only by successfully challenging both. *See Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1188 (10th Cir. 2016) ("When a district court dismisses a claim on two or more

---

[2] *See Cortez*, 478 F.3d at 1129 & n.24; *see also Fisher v. City of Las Cruces*, 584 F.3d 888, 899 (10th Cir. 2009) ("Accordingly, our precedent requires a showing in a handcuffing case of an actual, non-de minimis physical, emotional, or dignitary injury to succeed on a claim.").

[3] *See Scott v. Hern*, 216 F.3d 897, 911 (10th Cir. 2000).

[4] *See Cortez*, 478 F.3d at 1129.

independent grounds, the appellant must challenge each of those grounds.").

We agree with the district court that the evidence did not show a causal link between Officer Miller's actions and an actual injury to Mr. Zartner. To establish a causal link, Mr. Zartner needed to present expert medical testimony. But he failed to do so.[5]

## IV. In district court and his opening appeal brief, Mr. Zartner urged causation based solely on an inapplicable theory of "aggregation."

The district court apparently acknowledged that Mr. Zartner's fracture had constituted an actual injury. Despite the existence of an actual injury, the court concluded that Mr. Zartner had failed to present adequate evidence of a causal link between the injury and Officer Miller's use of force.

In both district court and his opening appeal brief, Mr. Zartner urged causation based solely on a theory of aggregation. Appellant's Opening Br. at 18 (Mr. Zartner arguing that he had "suffered serious injuries as the result of the aggregate conduct" of Officer Miller and others); *see also* Appellant's App'x at 106 (virtually identical language in Mr. Zartner's response to Officer Miller's summary-judgment motion in district court). Under a theory of aggregation, the court considers the conduct of multiple

---

[5] Because we affirm on the issue of causation, we need not decide whether a fact-finder could reasonably have inferred that Officer Miller had known that the handcuffs were too tight.

5

officers "in the aggregate." *Pauly v. White*, 874 F.3d 1197, 1214 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2650 (2018).

Mr. Zartner pointed out that we have sometimes aggregated officer conduct in § 1983 cases. *See Estate of Booker v. Gomez*, 745 F.3d 405, 421–22 (10th Cir. 2014). For example, we have aggregated officers' conduct when

- two officers worked together to handcuff and subdue an arrestee[6] and

- four officers participated in a coordinated use of force, which included handcuffing the arrestee, applying a carotid hold, putting pressure on the arrestee's back, and using a taser.[7]

But when the officers did not coordinate, we have considered each officer's liability based solely on his or her own acts. *See, e.g.*, *Pauly*, 874 F.3d at 1214.

Invoking the aggregation theory, Mr. Zartner contended that a reasonable jury could find causation by combining Officer Miller's handcuffing with (1) the deputy sheriffs' later use of force to obtain fingerprints and (2) other officers' later use of handcuffs.

---

[6] *Weigel v. Broad*, 544 F.3d 1143, 1148–49, 1151–53, 1153 n.4 (10th Cir. 2008).

[7] *Estate of Booker v. Gomez*, 745 F.3d 405, 413–16, 421–22 (10th Cir. 2014).

6

This contention stretches the theory of aggregation beyond our prior cases. Officer Miller played no role in the deputy sheriffs' use of force to obtain fingerprints, and the deputies' use of force played no role in the handcuffing of Mr. Zartner: The deputies and Officer Miller used force against Mr. Zartner in different episodes on different days, at different places, and for different purposes. And no evidence connects Officer Miller to the later use of handcuffs on Mr. Zartner. We therefore conclude that Mr. Zartner failed to show causation through a theory of aggregation.

V.  **In his appellate reply brief, Mr. Zartner added an unsupported theory of causation between Officer Miller's use of force and the wrist fracture.**

In his appellate reply brief, Mr. Zartner argued that Officer Miller's use of tight handcuffs, by itself, had caused the wrist fracture.[8] But this argument was not presented either in district court or in Mr. Zartner's opening appeal brief.

In district court, Officer Miller denied evidence of a causal link between his conduct and an injury that was more than *de minimis*. Appellant's App'x at 49–50. In response, Mr. Zartner invoked his aggregation theory. Appellant's App'x at 105–07. But he didn't argue in district court that Officer's Miller conduct had alone caused the injury. Mr.

---

8    After a third incident (*see* pp. 6–7, above), Mr. Zartner was diagnosed with de Quervain tenosynovitis, paresthesia, and other injuries.

Zartner thus forfeited this theory. *See Stender v. Archstone-Smith Operating Trust*, 910 F.3d 1107, 2018 WL 6423923, at *3 (10th Cir. 2018) (holding that the appellants forfeited a legal theory by failing to present it in district court).

Mr. Zartner also bypassed an opportunity to include this theory in his opening appeal brief. He instead argued that his injuries were "indivisible" based on the combination of force used by Officer Miller and the deputy sheriffs. *See* Appellant's Opening Br. at 18 ("The injury caused by the handcuffs was the first in a series of indivisible injuries by a series of actors thus making all actors jointly and severally liable."); *see also* Dist. Ct. Doc. No. 98 at 9 (using virtually identical language in Mr. Zartner's response to Officer Miller's summary-judgment motion in district court).

Mr. Zartner reverses course in his appellate reply brief, arguing for the first time that his fracture was caused solely by Officer Miller's use of handcuffs. But at this point it was too late for Mr. Zartner to change his theory of causation. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236 n.2 (10th Cir. 2016) (holding that adding an argument in the reply brief was "too late"). So even if Mr. Zartner had asserted this theory in district court, he would have waived it by omitting it in his

opening appeal brief. *See id.* ("The plaintiffs waived their challenge by waiting to make it in their reply brief.").[9]

Mr. Zartner's new theory is not only unpreserved but also unsupported. For this theory, Mr. Zartner relied on his declaration, a photograph, a report summarizing the results of an x-ray, a declaration by Dr. Symonds, and Dr. Christian Stob's deposition testimony. But these pieces of evidence do not provide the required medical evidence of a causal link between Officer Miller's use of allegedly tight handcuffs and the wrist fracture.

In his declaration, Mr. Zartner stated that he had no wrist pain before getting handcuffed by Officer Miller. Appellant's App'x at 146.

Along with the onset of pain, Mr. Zartner discussed a photograph of his right hand, stating that it "shows a prominent abrasion overlying the area under which the triquetral bone is located." *Id.* But the only

---

[9]    In the "summary of argument" section in his opening appeal brief, Mr. Zartner stated that "the District Court [had] ignored facts from which it could reasonably be inferred that the handcuffing caused the triquetral fracture." Appellant's Opening Br. at 12. But Mr. Zartner did not elaborate on the theory in his opening brief; there he argued only aggregation. *See id.* at 16–19. Mr. Zartner's stray sentence in his summary of argument did not constitute adequate briefing of a causation theory untethered to his aggregation theory. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) (concluding that a brief discussion in the introduction-to-argument section did not adequately present a distinct argument).

photograph in the summary-judgment record is blurry and shows no obvious abrasions on Mr. Zartner's right wrist.

X-rays were taken several days after deputy sheriffs had used nunchucks to apply pressure to Mr. Zartner's wrists. The x-rays revealed a triquetral chip fracture in his right wrist.

Lastly, Mr. Zartner pointed to Dr. Symonds's declaration and Dr. Stob's deposition testimony. In the declaration, Dr. Symonds stated that in his professional medical opinion, the x-rays of Mr. Zartner's right wrist showed a bone fracture of "indeterminate" age. Appellant's App'x at 110. And Dr. Stob testified that

- tight handcuffs can cause compression neuropathy and fractures and

- the symptoms of nerve compression include temporary numbness and tingling.

*Id.* at 150–51.

The resulting question is whether Mr. Zartner's evidence of causation is enough to create a triable issue of fact. To answer, we must decide whether expert medical testimony is necessary to create a triable issue of fact on causation. This question turns on whether causation here would constitute a medical question or a question that a lay person could answer based on ordinary experience.

The testimony of a medical expert is not always necessary to establish causation. For example, expert testimony might be unnecessary to

10

find causation when a brawl leads to a broken nose or black eye. *See Myers v. Ill. Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (stating that expert testimony is unnecessary when someone breaks a leg from a vehicle crash because causation would be understandable to a layperson). But when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation between a use of force and an injury.[10]

In our view, the tight handcuffing was not the obvious cause of Mr. Zartner's wrist fracture. We assume, for the sake of argument, that Mr. Zartner's fracture could have resulted from Officer Miller's use of tight handcuffs. But by the time that the fracture was diagnosed, a group of deputy sheriffs had used force on Mr. Zartner's wrists, applying pressure with nunchucks. And Dr. Stob testified that this use of force could have caused a fracture.

Given the two separate uses of force that could have caused the fracture, causation entails a medical question beyond a layperson's

---

[10]     *See Felkins v. City of Lakewood*, 774 F.3d 647, 651–52 (10th Cir. 2014); *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957); *accord Albertson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006) (holding that the defendants were entitled to summary judgment on a § 1983 claim because the plaintiff had failed to present expert medical testimony showing a causal link between the lack of medication and a stroke, reasoning that the stroke could have had many other causes); *Myers*, 629 F.3d at 643 ("But when there is no obvious origin to an injury and it has 'multiple potential etiologies, expert testimony is necessary to establish causation.'" (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46–47 (2d Cir. 2004))).

ordinary experience. *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (concluding that expert medical testimony was necessary on the "medical question" of "[w]hat causes a bone to fracture" because the injury had been complex, involved a complicated surgery, and causation went "beyond the sphere of the ordinary juryman"). In light of this medical question, Mr. Zartner needed to present expert medical testimony tying the fracture to Officer Miller's use of tight handcuffs. *See Harvey v. United States*, 685 F.3d 939, 952–53 (10th Cir. 2012) (upholding summary judgment for the defendant because expert testimony was necessary to show causation between improper medical treatment and further injury to a hand that had been fractured); *accord Smith v. Curran*, 472 P.2d 769, 771 (Colo. App. 1970) (requiring expert testimony because "the cause of an infection" is a matter lying "within the field of medical experts").[11] Mr. Zartner did not present this testimony. As a result, the new theory of causation would fail even if Mr. Zartner had preserved it in district court and his opening appeal brief.

---

[11] Though causation under § 1983 involves an issue of federal law, opinions by Colorado appellate courts provide useful guidance. *See Barnes v. Anderson*, 202 F.3d 150, 158–59 (2d Cir. 1999) (stating that "state tort analogs" bear on proximate cause under § 1983 even though the issue involves federal law).

## VI. Conclusion

The district court correctly concluded that the summary-judgment evidence would not permit a reasonable fact-finder to draw a causal link between Officer Miller's use of allegedly tight handcuffs and an actual injury to Mr. Zartner. We therefore affirm the district court's grant of summary judgment to Officer Miller.

Entered for the Court


Robert E. Bacharach
Circuit Judge

13