FILED
United States Court of Appeals
Tenth Circuit

February 22, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHNNY L. HARDEMAN, a/k/a Lo're
Pink,

      Plaintiff - Appellant,

v.

JESSICA SMITH, P.R.E.A.
Monitor/Warden Assistant; JERRY
PERRY, Unit Mgr. OSP; HEATHER
DIAZ, Psych. Services OSP; PATRICIA
SORRELLS, Medical Admin. OSP;
MARK KNUTSON; DAVID PARKER,
Personal Director; JERRY CHRISMAN,
Warden,

      Defendants - Appellees.

No. 18-7016
(D.C. No. 6:16-CV-00238-RAW-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.
_____

Johnny L. Hardeman, a/k/a Lo're Pink, an Oklahoma state prisoner proceeding

pro se, appeals the district court's entry of summary judgment in this civil rights

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

action under 42 U.S.C. § 1983. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm based on Hardeman's failure to exhaust administrative remedies.

## I.    Background

Hardeman is a transgender prisoner incarcerated at the Oklahoma Department of Corrections (ODOC), where she[1] is serving a life sentence for murder. In 2007, she was transferred from the Mack Alford Correctional Center (MACC) to the higher-security Oklahoma State Penitentiary (OSP) following a determination that she was having unprotected sex with other inmates despite being HIV-positive. She is still at OSP.

Hardeman filed this § 1983 lawsuit in 2016, alleging that numerous prison officials have discriminated against her and violated her First, Eighth, and Fourteenth Amendment rights. She asserts a deliberate indifference claim based on their failure to provide any treatment for her gender nonconforming disorder. She also asserts claims relating to their refusal to transfer her out of a single-cell unit in segregation (and preferably to a lower security facility); their denial of jobs, programs, and parole; and post-grievance retaliation, including segregation and discontinuance of medication for a chronic condition. Finally, she asserts state-law tort claims. The Defendants-Appellees include ODOC's regional director, the warden, an assistant warden who also serves as the facility's Prison Rape Elimination Act monitor, a unit manager, a designee of the

---

[1] Appellant identifies as female, so we use female pronouns here. We also use her terminology when referring to transgender identity as a "gender nonconforming disorder."

2

Administrative Review Authority (ARA), and medical providers at the facility (collectively, the "prison officials").

At the district court's direction, the prison officials prepared an investigative *Martinez* report.[2] The same day the report was filed, the prison officials filed a motion to dismiss and/or a motion for summary judgment. Hardeman filed a response, as well as a request for injunctive relief. The district court granted summary judgment and denied the request for injunctive relief. It held that (1) Hardeman did not properly exhaust administrative remedies; (2) to the extent Hardeman asserted any official-capacity claims, the prison officials are immune from liability under the Eleventh Amendment; (3) Hardeman failed to show any defendant personally participated in the alleged constitutional violations and did not satisfy the requirements for supervisory liability; (4) Hardeman's deliberate indifference claim fails because there are no genuine issues of material fact; (5) Hardeman's procedural due process claims fail for the same reason; and (6) the prison officials are entitled to qualified immunity. The district court declined to exercise supplemental jurisdiction over any remaining state law claims. Hardeman filed this timely appeal.

---

[2] The Prison Litigation Reform Act (PLRA) requires district courts to screen prisoner complaints for frivolousness, failure to state a claim, and immunity. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b). To facilitate this screening process, district courts can order prison officials to investigate the prisoner's allegations to determine whether they have any factual or legal basis. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Because this authority stems from *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978) (per curiam), courts frequently refer to the resulting report as a "*Martinez* report."

## II. Analysis

## A. The PLRA and Exhaustion of Administrative Remedies

Our analysis necessarily begins with the threshold question of exhaustion. The PLRA provides that a prisoner cannot bring an action "with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA . . . ."). "[S]ubstantial compliance is insufficient." *Fields v. Okla. State Pen.*, 511 F.3d 1109, 1112 (10th Cir. 2007). Proper exhaustion requires compliance with all of the prison's grievance procedures, including "deadlines and other critical procedural rules[,] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust [her] administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Because the exhaustion doctrine is an affirmative defense, the prison officials "bear the burden of asserting and proving that [Hardeman] did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). But once they prove failure to exhaust, "the onus falls on [Hardeman] to show that remedies were unavailable to [her]." *Id.* For example, exhaustion is not required "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail

4

[herself] of an administrative remedy." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

**B.     ODOC Procedures**

ODOC has adopted two sets of operations procedures (OPs) that are relevant to our exhaustion inquiry:  (1) "Management of Gender Nonconforming Inmates" (OP-140147), and (2) "Inmate/Offender Grievance Process" (OP-090124).

Procedure OP-140147 addresses the management of gender nonconforming offenders.  *See* R., Vol. 2 at 34-45 (effective Oct. 29, 2015), 47-52 (revised effective Apr. 28, 2016).  It establishes a Personal Identity Administrative Review Authority (PIARA) and requires gender nonconforming offenders like Hardeman to comply with the grievance process set forth in OP-090124 to ask PIARA to assess their housing, clothing, and health care needs (such as hormonal therapy and surgical sex reassignment).

Procedure OP-090124 contains ODOC's grievance process, *id.* at 55-75,[3] and provides offenders with a method to "seek formal administrative decisions or answers to issues or complaints."  *Id.* at 56.  Grievable issues include "conditions of confinement, actions of staff, and incidents occurring within or under the authority and control of ODOC that have personally affected" the offender, "for which a remedy may be allowed by the agency or by law."  *Id.* at 57.  "Personal [i]dentity" issues are listed as an appropriate topic for grievances—"including, but not limited to, gender variant clothing, hormone treatment, specific mental health treatment, separate showering, etc."  *Id.* at 60.

---

[3] This version of OP-090124 has an effective date of July 19, 2016 (revised Sept. 15, 2016) and is the only version in the record.

Unless the complaint involves a sensitive topic or an emergency, the offender must attempt to resolve the complaint through an informal resolution process before submitting a grievance. The offender must first speak to an appropriate staff member; if those efforts are unsuccessful, the offender must file a written Request to Staff. The formal grievance process then begins with the submission of a written Inmate/Offender Grievance Form (with the related Request to Staff attached) to the reviewing authority or the facility correctional health services administrator, whichever is appropriate. The next step is an appeal to the ARA or to the Chief Medical Officer if it is a medical grievance. The ruling of the ARA or Chief Medical Officer is final and concludes the administrative remedy procedures available through ODOC. Each step must be completed within a designated time frame, and procedures are in place for cases in which prison officials don't respond.

## C.  Hardeman's Grievances

Hardeman argues that she exhausted her administrative remedies by submitting Requests to Staff and Inmate/Offender Grievance Forms and then appealing the denial of her grievances to the ARA. To the extent there were any procedural defects (which she disputes), she attributes them to the prison officials' conduct.

The district court outlined the requirements for ODOC's grievance process and examined each of Hardeman's Requests to Staff, Inmate/Offender Grievance Forms, and appeals against that backdrop. It concluded she did not comply with all procedural requirements and thus did not complete the appeals process. The district court acknowledged "these grievance proceeding[s] are somewhat confusing," but attributed

6

"much of the confusion" to Hardeman's "failure to comply with the grievance policy." R., Vol. 5 at 104. Having found that Hardeman failed to exhaust her administrative remedies, the district court granted summary judgment for the prison officials, though it proceeded to analyze the remaining claims and defenses anyway.

## D. Standard of Review

We review de novo the district court's failure-to-exhaust finding. *See Jernigan*, 304 F.3d at 1032. Because Hardeman is proceeding pro se, "we construe [her] pleadings liberally." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). We make some allowances for deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But we "cannot take on the responsibility of serving as [her] attorney in constructing arguments and searching the record." *Id.*

## E. Failure to Exhaust

We agree with the district court's conclusion that Hardeman did not exhaust her administrative remedies. Our careful review of the record revealed numerous procedural errors, including (1) failing to attach a copy of the required Request to Staff to a grievance form to complete the first step of the grievance process; (2) filing appeals with the ARA after being informed of procedural errors without first remedying those errors; (3) not using the proper form for an appeal; (4) submitting a grievance form with a Request to Staff that does not match the issue on the grievance form; and (5) failing to file a timely appeal.

7

We cannot overlook these deficiencies. "[T]he PLRA does not enable judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems." *Jernigan*, 304 F.3d at 1032 (brackets and internal quotation marks omitted). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Furthermore, we are not persuaded that the prison officials' actions here rose to the level of preventing, thwarting, or hindering, such that an administrative remedy was unavailable to Hardeman. *See Little*, 607 F.3d at 1250.

## F. Deliberate Indifference Claim

Because we affirm based on Hardeman's failure to exhaust administrative remedies, we need not reach her appellate arguments about the inadequacy of the discovery process or the district court's failure to appoint counsel; after all, her claims were not properly before the district court. Likewise, we need not reach the merits of her constitutional claims or the prison officials' defenses (such as insufficient allegations of personal involvement, qualified immunity, and sovereign immunity for official-capacity claims).

Even so, a dismissal based on failure to exhaust is without prejudice, so Hardeman's claims may well resurface before the district court. The district court properly recounted the subjective and objective components of a deliberate indifference claim. However, we identified three problematic matters within the

8

district court's analysis of the deliberate indifference claim during our review. To ensure those matters are addressed as may become necessary, we discuss them here.

First, the district court relied on an incomplete record. The internal page numbers on the medical records are all odd numbers, *see, e.g.*, R., Vol. 6, at 13-84, whereas the internal page numbers on other records are both odd and even, *see, e.g.*, *id.* at 86-87. It thus appears that only one side of the medical records was copied for the *Martinez* report.

Second, the district court inaccurately characterized the existing record twice in applying the standard and concluding "the acts complained of do not show deliberate indifference to plaintiff's medical needs as alleged," R., Vol. 5 at 107.

In the first instance, the district court stated, "It is clear from the record . . . that Plaintiff received medical treatment to discuss [her] gender issues beginning on September 22, 2015 . . . [and] was seen on numerous occasions from that date for the same issue." *Id*. But on September 22, a psychological clinician merely conducted mental health rounds, noting that Hardeman was seen in her cell and asked to discuss her gender issues in private when possible. R., Vol. 6 at 41. Similarly, the record evidence cited by the district court as to "numerous" follow-up treatments shows only a series of in-cell meetings between Hardeman and medical personnel, during which Hardeman (1) advised medical personnel she wanted to talk about and/or receive treatment for her gender identity disorder and (2) expressed frustration at the lack of response.

9

In the second instance, the district court stated: "It is clear from the record that medical care was provided. Where there is such evidence of a 'series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a "deliberate indifference" to the prisoner's complaints.'" R., Vol. 5 at 107 (quoting *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976) (alteration in original)). The record does not support this summary invocation of *Smart* either. There appears to be a genuine issue of material fact as to whether the mental health rounds described above constitute "medical care" or "sick calls." The documentation of Hardeman's clinical interview shows only a diagnosis of "suspected" gender identity disorder, not a confirmed one. R., Vol. 6 at 46. And no medication was dispensed.

Third, the district court was overly ambitious in finding Hardeman "is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances." R., Vol. 5 at 108. This finding disregards the many pleadings in which Hardeman repeatedly argues she is not receiving *any* treatment at all. Also, it is at odds with *Lamb v. Norwood*, 899 F.3d 1159, 1161 (10th Cir. 2018).[4] In *Lamb*, this court identified four currently available treatments

---

[4] The transgender prisoner in *Lamb* received hormone treatment, testosterone-blocking medication, and weekly counseling sessions, but she wanted greater doses of hormones and a sex-change operation too. She alleged that prison officials were deliberately indifferent to her gender dysphoria, but the district court granted summary judgment to the officials. This court affirmed, holding that a reasonable factfinder could not infer deliberate indifference given the existing treatment, and reiterating that "prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." 899 F.3d at 1162.

for gender dysphoria: (1) changes in gender expression and role; (2) hormone therapy to make the body feminine or masculine; (3) surgery to change primary or secondary sex characteristics; and (4) psychotherapy. *Id.* Here, a reasonable jury could conclude the in-cell meetings referenced above do not rise to the level of "psychotherapy,"[5] and the record contains no evidence of the other three possible treatments. If there is at least a genuine issue as to whether Hardeman has even received any of the four currently available treatments, she cannot simply be "asserting a difference of opinion" as to "the kind and quality of medical treatment."

There was no need for the district court to reach the merits of Hardeman's deliberate indifference claim. If Hardeman reasserts this claim in future litigation after proper exhaustion, the district court should give due consideration to the matters we have discussed.

## G. Sealing of the Record

Last, we address Hardeman's argument that the district court did not properly seal the record. The prison officials moved to seal the medical records attached to the *Martinez* report because they contain private health information, which is confidential under state law. Hardeman opposed the motion, even though it was for

---

[5] Hardeman's dialogue with a psychologist during a request for health services is informative in this regard. Hardeman advised, "I never get a real opportunity to discuss issues with you when you do your rounds like I would like to." R., Vol. 2 at 238. That psychologist responded, "As I have discussed with you, rounds are meant for check-in, if you would like to have more time we can set that up." *Id.* Yet the record shows the discussions regarding Hardeman's gender nonconforming disorder kept taking place during rounds.

11

her own protection, but the district court granted it. Hardeman now makes two equally unavailing arguments relating to sealing. First, she argues *more* of the record should have been sealed, even though she never made such a request. Second, she argues she did not receive copies of the sealed documents and was thus "denied the opportunity to marshall a proper defense," Aplt. Opening Br. at 26; yet, the certificate of service indicates otherwise. We agree with the district court's approach on the sealing of medical records.

## III.    Conclusion

We affirm the district court's judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge