IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexis Welter,                                  :
                        Petitioner              :
                                                :    No. 302 M.D. 2019
              v.                                :
                                                :    Submitted: January 24, 2020
Correct Care Solutions, SCI Fayette,            :
Department of Corrections, Capozza,             :
Stephanie Wood, Joseph Silva,                   :
                        Respondents             :


***OPINION NOT REPORTED***

MEMORANDUM OPINION
PER CURIAM                                         FILED: August 25, 2020


Before the Court in our original jurisdiction are the preliminary objections filed by Correct Care Solutions, the State Correctional Institution at Fayette (SCI-Fayette), the Department of Corrections (Department), and Mark Capozza, Stephanie Wood, and Joseph Silva (collectively, Respondents) to the petition for review (Petition) filed by Alexis Welter (Welter).[1] We grant the preliminary objections and dismiss the Petition.

---

[1] Welter originally filed a complaint in the Court of Common Pleas of Fayette County (trial court), which transferred the matter to this Court by order dated May 1, 2019. In their preliminary objections, Respondents assert that this Court lacks jurisdiction over the matter and that jurisdiction properly lies in the trial court. Assuming Respondents are correct, we nonetheless decline to transfer the case back to the trial court. We do so based on principles of judicial economy and our conclusions, discussed more fully *infra*, that regardless of which tribunal entertained her case, Welter has failed to plead a cognizable cause of action as a matter of law and the legal deficiencies of the Petition are incurable, even if this Court *sua sponte* granted her leave to amend. *See Balshy v. Rank*, 490 A.2d 415, 416 (Pa. 1985); *Richardson v. Pennsylvania Department of Corrections*, 991 A.2d 394, 397-98 (Pa. Cmwlth. 2010); *see also Wilson v. Marrow*, 917 A.2d 357, 365 (Pa. Cmwlth. **(Footnote continued on next page…)**

On May 29, 2019, Welter, an inmate at SCI-Fayette, filed the Petition alleging that Respondents have displayed deliberate indifference to Welter's medical needs in violation of the Eighth Amendment to the United States Constitution.[2]

According to the Petition, Welter claims to be a transgender female currently housed in a male prison who has presented herself as a female since the date of incarceration on August 28, 2018.[3] Welter alleges that she suffers from gender dysphoria (GD) and that Respondents have provided her with inadequate medical treatment, causing her to develop a drug addiction and depression.

The Department has issued Policy Statement 13.2.1, effective May 7, 2019, titled "Access to Health Care Procedures Manual" (Manual), and section 19 of the Manual specifically deals with "Diagnosis and Treatment of [GD]." (Manual, 13.2.1, §19.)[4] By its terms, section 19 explicitly acknowledges that GD is "a condition formally recognized and described by the American Psychiatric Association in the current version of the *Diagnostic and Statistical Manual of Mental Disorders*, 5th edition, (DSM-5)," Manual, 13.2.1, §19.B.1. Section 19 further states that "[t]he latest version of *Standards of Care for the Health of Transsexual,*

---

**(continued…)**

2007); *Feldman v. Lafayette Green Condominium Association*, 806 A.2d 497, 500 (Pa. Cmwlth. 2002).

[2] U.S. Const. amend. VIII.

[3] Consistent with the factual averments in the Petition, we will use female pronouns when referring to Welter.

[4] The Manual is available at:
https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/13.02.01%20Access%20to%20Health%20Care.pdf (last visited August 24, 2020).

*Transgender, and Gender-Nonconforming People*, published by the World Professional Association for Transgender Health (WPATH), will serve as guidelines for the overall health care of identified inmates." Manual, 13.2.1, §19.D.1.

Pursuant to section 19, the Department has created a psychiatric division for "the mental health diagnosis and treatment of inmates diagnosed with GD," a clinical division "for the medical treatment of inmates diagnosed with GD," and a "GD Treatment Review Committee" (Committee). *Id.* at §19.A. As constructed, the Committee consists of various medical and psychological professionals and other experts who practice in the field of treating those with GD. *Id.* As part of its duties under the Manual, the Committee reviews and approves an Individual Recovery Plan (IRP) for individuals suffering from GD. If an inmate disagrees with the Committee's disapproval of a particular treatment plan or procedure, the inmate may file a grievance in accordance with the Department's policy.

As averred in the Petition, on August 17, 2018, Respondents began treating Welter with hormone replacement therapy. On September 20, 2018, Welter formally requested permanent facial hair removal. According to Welter, she

> requested access to permanent facial hair removal for multiple reasons that make it an essential part of treating her GD. Welter presents herself as a female in mannerisms, verbal [and] non-verbal communication, hair style, [choice] of clothing, use of eye make-up, and physical[,] secondary sexual characteristics brought about from hormone replacement therapy. In light of the foregoing, it is plain to see why the presence of facial hair is a major medical issue concerning Welter's GD.

(Petition, ¶11.) Welter asserts that she "is suffering direct injury from the deliberate indifference shown to her request for permanent facial hair removal in the form of serious damage to her mental health." *Id.* ¶12. Welter claims that "[t]he failure to

3

address her facial hair [issue] has caused depression, anxiety, apathy, insomnia, lack of appetite, [and] aggravation of her sensation of dysphoria." *Id.*

Based on the allegations in the Petition and grievance documents attached thereto, Welter receives hormone replacement therapy in the form of a medication named Estradiol. This medicine is an estrogen steroid hormone that assists males in "transitioning" to the female gender. Welters also takes other medications and routinely consults with a psychiatrist and the Corrections Classification and Program Manager, who is a member of the Committee. After Welter's request for permanent facial hair removal was denied, she filed a grievance contesting the decision. The medical professionals processing and deciding Welter's grievance reviewed her medical records and determined that, without permanent facial hair removal, she is still "receiving appropriate medical care" and that her "medical needs are being met." *Id.* at Ex. A. As such, Respondents denied Welter's grievance.

In her Petition, Welter asserts a claim for deliberate indifference under the Eighth Amendment to the United States Constitution and a medical negligence claim based on a theory of *res ipsa loquitur*. Along with the Petition, Welter included a certificate of merit[5] stating that expert testimony is unnecessary for prosecution of her claims because Respondents' conduct "is so obviously negligent and inadequate." (Petition, ¶86.) For relief, she requests an affirmative injunction requiring Respondents to provide her with a proper evaluation and permanent facial hair removal as well as monetary damages.[6]

---

[5] *See* Pennsylvania Rules of Civil Procedure (Pa.R.C.P.) Nos. 1042.1-1042.12.

**(Footnote continued on next page…)**

4

In turn, Respondents filed preliminary objections in early August 2019 and briefs in support of their positions. Respondents, *inter alia*, asserted preliminary objections in the nature of a demurrer, contending that the Petition did not state a valid cause of action. Welter did not file a brief in opposition. The matter is now ripe for disposition.

Initially, we note that in ruling on preliminary objections in the nature of a demurrer, the Court must accept as true all well-pleaded material facts and all inferences reasonably deducible therefrom. *Barndt v. Pennsylvania Department of Corrections*, 902 A.2d 589, 592 (Pa. Cmwlth. 2006). However, the Court is not required to accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinion. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013) (en banc).

The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court found that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). This is true whether the indifference is by "prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

---

**(continued…)**

[6] On June 11, 2019, Welter filed a praecipe for default judgment. *See* Pa.R.C.P. Nos. 237.1, 1037. On July 11, 2019, this Court declined to file the praecipe and, instead, filed an order directing Respondents to file an answer or otherwise plead within 30 days.

intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

In order to state a viable Eighth Amendment claim, an inmate/petitioner must allege facts or omissions by a respondent sufficiently harmful to show deliberate indifference to a serious medical need. *Id.* at 106. A respondent exhibits deliberate indifference if the respondent (i) knows of and disregards an excessive risk to the inmate's health or safety; (ii) was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) draws the inference. *Tindell v. Department of Corrections*, 87 A.3d 1029, 1039 (Pa. Cmwlth. 2014). With respect to the second prong of the standard, a "serious medical need" exists if a respondent's act or omission results in "the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Broadly speaking, federal courts have recognized GD treatment as a serious medical need and have held that conduct which rises to the level of deliberate indifference to that medical need can, in appropriate cases, result in a cognizable constitutional tort claim under the Eighth Amendment and Section 1983.[7] *See, e.g.*,

---

[7] Section 1983 of the Civil Rights Act of 1964, 42 U.S.C. §1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983.

*Hood v. Department of Children and Families*, 700 F. App'x 988, 990 (11th Cir. 2017) (unreported); *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015); *Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011); *Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995). Nonetheless, recent decisions from the United States Courts of Appeals for the First, Fifth, Seventh and Tenth Circuits have established that, in general, it is extremely difficult for an inmate to make out an Eighth Amendment claim when the inmate is receiving some type of medically acceptable treatment for GD. *Campbell v. Kallas*, 936 F.3d 536, 547-49 (7th Cir. 2019); *Gibson v. Collier*, 920 F.3d 212, 216-28 (5th Cir. 2019); *Lamb v. Norwood*, 899 F.3d 1159, 161-63 (10th Cir. 2018); *Kosilek v. Spencer*, 774 F.3d 63, 76-78, 87-89, 96 (1st Cir. 2014) (en banc).

As a basic precept, these cases have recognized, as a starting point, that "[w]hen prison officials utterly fail to provide care for a serious medical condition, the constitutional violation is obvious." *Campbell*, 936 F.3d at 548. However, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). As such,

> prisons aren't obligated to provide every requested treatment once medical care begins. In a deliberate [] indifference case challenging the medical judgment of prison healthcare professionals who actually diagnose and treat an inmate's medical condition (as opposed to ignoring it), we necessarily evaluate those discrete treatment decisions. And we defer to those decisions unless no minimally competent professional would have made them.

*Campbell*, 936 F.3d at 548 (internal quotation marks and citations omitted).

Stated somewhat differently, "[t]here is no Eighth Amendment claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment." *Gibson*, 920 F.3d

7

at 220. Rather, "[t]he law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of our court to second guess medical judgments or to require that [a department of corrections] adopt the more compassionate of two adequate options." *Kosilek*, 774 F.3d at 90.

Relying on these principles, the court in *Kosilek*, sitting *en banc*, concluded that the state actors did not engage in deliberate indifference to the petitioners' medical needs where the petitioners, suffering from GD and severe depression and anxiety, asserted that they were in need of sex reassignment surgery (SRS). However, the petitioners in that case received other forms of medically acceptable treatment. In addressing an Eighth Amendment claim in this factual context, the *Kosilek* court stated:

> The question before our court . . . is not whether antidepressants and psychotherapy alone are sufficient to treat [GD], or whether [GD] constitutes a serious medical need. Rather, the question is whether the decision not to provide SRS—in light of the continued provision of all ameliorative measures currently afforded [the petitioners] is sufficiently harmful to [petitioners] so as to violate the Eighth Amendment. It is not.
>
> \*     \*     \*
>
> That the [department of corrections] has chosen one of two alternatives—both of which are reasonably commensurate with the medical standards of prudent professionals[]—is a decision that does not violate the Eighth Amendment.

*Id.* at 89-90 (internal citations omitted).

After the First Circuit rendered its decision in *Kosilek*, the Fifth and Tenth Circuits issued their decisions in *Gibson* and *Lamb*, respectively. In both

cases, the courts held, in essence, that there is no constitutional right to GD treatment beyond hormone therapy and psychological counseling sessions.

The *Gibson* court, citing *Kosilek*, initially pointed out that "respected medical experts fiercely question whether [SRS], rather than counseling and hormone therapy, is the best treatment for [GD]." 920 F.3d at 216. The court noted that the correctional facility "provided [the petitioner] with counseling and hormone therapy" and stated that the petitioner acknowledged "the on-going good faith medical debate over the necessity and efficacy of [SRS]." *Id.* at 224. From these facts, the *Gibson* court reiterated that "mere disagreement with one's medical treatment is insufficient to state a claim under the Eighth Amendment" and concluded that "[t]his bedrock principle" necessarily "doom[ed]" the petitioner's case. *Id.* at 216 (internal quotation marks and citations omitted).

Similarly, the *Lamb* court echoed that, although the petitioner in that case disagreed with her course of medical treatment, "the disagreement alone cannot create a reasonable inference of deliberate indifference." 899 F.3d at 1163. There, the court noted that the petitioner was "receiving hormone treatment, testosterone-blocking medication, and weekly counseling sessions" and, relying on prior circuit precedent, determined "that these forms of treatment [] preclude liability for an Eighth Amendment violation." *Id.* at 1161. In so holding, the *Lamb* court emphasized that it has "consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." *Id.* at 1162. In the end, the court concluded that there is no Eighth Amendment violation where "the state's department of

corrections had made an informed judgment about treatment options in the face of disagreement within the medical community." *Id*.[8]

In *Campbell*, the court addressed the issue of whether prison officials were entitled to qualified immunity for a prisoner's deliberate indifference claim brought through the vehicle of Section 1983.[9] In concluding that the prison officials were protected by qualified immunity, the court stated in relevant part:

> In short, when the [prison officials] denied [the prisoner's] request for [SRS], no case clearly establihed a right to [GD] treatment beyond hormone therapy. As for [the prisoner's] requests for electrolysis[, *i.e.*, permanent facial hair removal,] and makeup, our cases offer no indication that denying arguably nonmedical cosmetic accommodations violates the Eighth Amendment.

936 F.3d at 549.

Here, Welter has not alleged that Respondents had a blanket policy against utilizing permanent facial hair removal as a form of treatment for GD or that her medical and health providers did not consider the possibility of such treatment as part of her IRP and overall treatment plan. Welter admits that Respondents, in addressing the issues and symptoms associated with her GD, provided her with hormone replacement therapy and psychiatric care. Upon review of Welter's medical records, the medical professionals determined that she was and is receiving appropriate medical care, absent permanent facial hair removal. Notably, apart from bald allegations, Welter has failed to plead facts sufficient to establish that her

---

[8] *But see Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019).

[9] As the court explained, "[q]ualified immunity protects government officials from damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell*, 936 F.3d at 545 (internal citations and quotation marks omitted).

medical and mental health providers were not competent to treat her GD. On the facts as averred, Welter's assertions that her current treatment plan or IRP is inadequate is merely a disagreement with the opinions of her medical providers.

With respect to Welter's alleged increase in mental distress, she has not averred that her current psychiatric/psychological regime has been completely ineffectual or that she has pursued additional treatment and/or an adjustment to her medications to further address her mental health. Consequently, Welter does not plausibly allege that Respondents knew that she faced a substantial risk of serious bodily harm and acted in plain and intentional disregard of that risk in denying her request for permanent facial hair removal. Because the material allegations in the Petition do not rise to the level of a constitutional violation, the Court dismisses Welter's deliberate indifference claim against Respondents as legally insufficient.

Moreover, with respect to the doctrine of *res ipsa loquitur* in medical negligence cases, our Superior Court has explained:

> Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act . . . . With all but the most self-evident medical malpractice actions there is the [] requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.
>
> A narrow exception to the requirement that medical malpractice claims be supported by expert testimony applies in instances of obvious negligence, *i.e.,* circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert. In such instances, the doctrine of *res ipsa loquitur* allows a fact-finder to infer

11

> from the circumstances surrounding the injury that the harm suffered was caused by the negligence of the defendant.

*Fessenden v. Robert Packer Hospital*, 97 A.3d 1225, 1229-30 (Pa. Super. 2014) (internal citations omitted). Put simply, the *res ipsa loquitur* "exception to the requirement of expert testimony in medical malpractice actions applies where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

Here, the issue of whether Welter's medical and health providers breached the professional standard of care in deciding not to provide Welter permanent facial hair removal is one that clearly requires expert testimony. This issue is not one where blatant negligence is patent and within the realm of layperson knowledge, such as, for example, when a surgeon inadvertently leaves a sponge or other medical material/instrument in a patient's abdominal cavity. *See Jones v. Harrisburg Polyclinic Hospital*, 437 A.2d 1134, 1138 n.11 (Pa. 1981). Contrary to Welter's assertion, expert testimony is an indispensable requisite to establish her claim. Therefore, the Court dismisses Welter's negligence claim based on a theory of *res ipsa loquitur*.

Accordingly, having concluded that Welter has failed to state a claim upon which relief can be granted, the Court sustains Respondents' preliminary objections and dismisses the Petition.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexis Welter, : 
           Petitioner : 
            :    No. 302 M.D. 2019
          v. : 
            : 
Correct Care Solutions, SCI Fayette, : 
Department of Corrections, Capozza, : 
Stephanie Wood, Joseph Silva, : 
          Respondents : 

**PER CURIAM**

## ***ORDER***

AND NOW, this 25th day of August, 2020, the preliminary objections filed by Correct Care Solutions, the State Correctional Institution at Fayette, the Department of Corrections, and Mark Capozza, Stephanie Wood, and Joseph Silva to the petition for review (Petition) filed by Alexis Welter are hereby sustained and the Petition is dismissed.