**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

JON C. CALDARA; BOULDER RIFLE
CLUB, INC.; GENERAL COMMERCE,
LLC; TYLER FAYE; MARK RINGER,

       Plaintiffs - Appellants,

v.

CITY OF BOULDER; JANE S.
BRAUTIGAM, in her official capacity as
City Manager of the City of Boulder;
GREGORY TESTA, in his official
capacity as Chief of Police of the City of
Boulder; and JOHN DOES 1-10,

       Defendants - Appellees,

AARON BROCKETT, in his official
capacity as Mayor Pro Tem of the City of
Boulder; CYNTHIA A. CARLISLE, in
her official capacity as Boulder City
Council Member; JILL ADLER GRANO,
in her official capacity as Boulder City
Council Member; and JOHN DOES 1-10;
SUZANNE JONES, in her official
capacity of Mayor of the City of Boulder;
LISA MORZEL, in her official capacity
of Boulder City Council Member;
MIRABAI KUK NAGLE, in her official
capacity as Boulder City Council
Member; SAMUEL P. WEAVER, in his
official capacity as Boulder City Council
Member; ROBERT YATES, in his
official capacity as Boulder City Council
Member; MARY D. YOUNG, in her

No. 18-1421

official capacity as Boulder City Council
Member,

  Defendants.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 18-cv-1211-MSK-MEH)**

---

Cody J. Wisniewski, Mountain States Legal Foundation (Zhonette M. Brown, Mountain States Legal Foundation, with him on the briefs), Lakewood, Colorado, for Plaintiffs-Appellants.

Robert Reeves Anderson, Arnold & Porter Kaye Scholer, Denver, Colorado (Timothy R. MacDonald, Evan M. Rothstein, and Patrick B. Hall, Arnold & Porter Kaye Scholer, Denver, Colorado; and Thomas A. Carr and Luis A. Toro, Boulder City Attorney's Office, Boulder, Colorado, with him on the brief), for Defendants-Appellees.

---

Before **HARTZ, SEYMOUR,** and **MATHESON,** Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

  Plaintiffs are citizens of the City of Boulder and entities with various interests in the sale or possession of firearms within the city. They filed suit against the City of Boulder and several of its officials, alleging that Boulder City Ordinances 8245 and 8259 violate the U.S. Constitution, the Colorado State Constitution, and Colorado state statutes, Colo. Rev. Stat. §§ 29-11.7-102 & 103. The district court abstained and stayed the proceedings pending resolution of the state law preemption question in state court.

*Caldera v. City of Boulder*, 341 F. Supp. 3d 1241 (D. Colo. 2018). Plaintiffs appeal, and we affirm.

I.

On May 15, 2018, the Boulder City Council unanimously passed Ordinance 8245 ("the ordinance"),[1] which amended the Boulder Revised Code to prohibit the sale or possession of "assault weapons"[2] and large-capacity ammunition magazines within the

---

[1] Subsequent to passing Ordinance 8245, the City of Boulder enacted Ordinance 8259 on June 19, 2018, which amends and clarifies some of the provisions of Ordinance 8245. The district court found that Ordinance 8259 did not "fundamentally change the thrust of the prior Ordinance" and plaintiffs do not appeal that finding. *Caldera v. City of Boulder*, 341 F. Supp. 3d 1241, 1242 (D. Colo. 2018). All references to "the ordinance" are to Ordinance 8245 with the 8259 changes included.

[2] The ordinance provides the following definition for "assault weapon":
   (a) All semi-automatic center-fire rifles that have the capacity to accept a detachable magazine and that have any of the following characteristics:
      (1) A pistol grip or thumbhole stock.;
      (2) A folding or telescoping stock; or
      (3) Any protruding grip or other device to allow the weapon to be stabilized with the non-trigger hand.
   (b) All semi-automatic center-fire pistols that have any of the following characteristics:
      (1) Have the capacity to accept a magazine other than in the pistol grip; or
      (2) Have a secondary protruding grip or other device to allow the weapon to be stabilized with the non-trigger hand.
   (c) All semi-automatic shotguns that have any of the following characteristics:
      (1) A pistol grip or thumbhole stock;
      (2) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;
      (3) A folding telescoping stock;
      (4) A fixed magazine capacity in excess of 5 rounds; or
      (5) The capacity to accept a detachable magazine.
   (d) Any firearm which has been modified to be operable as an assault weapon as defined herein.
   (e) Any part or combination of parts designed or intended to convert a firearm into an assault weapon, including any combination of parts from which an assault weapon

3

City of Boulder. The ordinance also raises the legal age for possession of firearms from eighteen to twenty-one. The City of Boulder is a home-rule municipality under the Colorado Constitution, which grants Boulder the authority to pass ordinances in "local and municipal matters" that supersede "any law of the state in conflict therewith." Colo. Const. art. XX, § 6. Boulder passed the ordinance pursuant to its home-rule authority under the Colorado Constitution.

Plaintiffs filed this law suit challenging the ordinance under Colorado state law and the U.S. Constitution. They contend the ordinance is preempted by Colo. Rev. Stat. §§ 29-11.7-102 & 103. Section 29-11.7-102 limits the information that local governments may retain about guns and gun owners. Section 29-11.7-103 provides that "[a] local government may not enact an ordinance, regulation, or other law that prohibits the sale, purchase, or possession of a firearm that a person may lawfully sell, purchase, or possess under state or federal law." Plaintiffs also contend the ordinance violates the First, Second, Fifth, and Fourteen Amendments to the U.S. Constitution, as well as provisions of the Colorado Constitution.

Shortly after plaintiffs filed this action, other individuals and entities filed suit in state court in Boulder County challenging this same ordinance. *Chambers v. City of Boulder*, No. 2018-CV-30581 (Colo. D. Ct., Boulder Cty. filed June 14, 2018)

---

may be readily assembled if those parts are in the possession or under the control of the same person.

Aplt. App. at 45.

4

(Complaint at 1). Because of the uncertain state law issue in this case, the district court here decided to abstain under the Supreme Court's precedent in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). The district court stayed federal proceedings pending a determination by the Colorado state court as to whether the ordinance is preempted by Colorado statutes §§ 29-11.7-102 & 103. Plaintiffs appeal the district court's determination.

## II.

Plaintiffs argue that the district court erred in abstaining under *Pullman*. The *Pullman* doctrine is a "narrow exception" to the federal courts' general duty to decide cases and "is used only in exceptional circumstances." *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (citation omitted). The policy underlying *Pullman* abstention is that federal courts should avoid "premature constitutional adjudication," *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 306 (1979) (citation omitted), and the risk of rendering advisory opinions, *Moore v. Sims*, 442 U.S. 415, 428 (1979) ("[T]he *Pullman* concern [is] that a federal court will be forced to interpret state law without the benefit of state-court consideration and . . . render[ ] the federal-court decision advisory and the litigation underlying it meaningless.") (citation omitted). *Pullman* avoids "federal-court error in deciding state-law questions antecedent to federal constitutional issues," by allowing for parties to adjudicate disputes involving "unsettled state-law issues" in state courts. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997).

5

In reviewing the district court's decision to abstain under *Pullman*, we first "review de novo whether the requirements for *Pullman* abstention have been met." *Kan. Judicial Review*, 519 F.3d at 1114–15 (citation omitted). This is so because "[t]he question of the clarity of state law is essentially legal in nature." *Vinyard v. King*, 655 F.2d 1016, 1019 (10th Cir. 1981) (citation omitted).

If we determine that the requirements for abstention under *Pullman* are met, we then review for abuse of discretion the district court's decision to abstain. *See Harman v. Forssenius*, 380 U.S. 528, 534 (1965) ("In applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law.") (citation omitted); *see also Vinyard*, 655 F.2d at 1018 ("[If] the particular case falls within the ambit of Pullman . . . , [the court] must then make a discretionary determination . . . as to whether abstention is in fact appropriate.") (citation omitted). Abuse of discretion occurs "only when [the district court] makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 990 (10th Cir. 2019) (internal quotation marks and citation omitted). We apply these principles to plaintiffs' claims on appeal.

A.

Plaintiffs contend the requirements for *Pullman* abstention are not satisfied. We have recognized three requirements that must be met to justify abstention under *Pullman*:

6

(1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law by the district court would hinder important state law policies.

*Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992) (citation omitted).

A complex issue of state law underlies the federal constitutional claims in this case. Both sides agree that the Boulder City Ordinance conflicts with Colorado statutes §§ 29-11.7-102 & 103. As the district court recognized, however, the statutes "rub[] up against Art. XX, Section 6 of the Colorado constitution," which grants municipalities regulatory authority over the General Assembly in matters of local and municipal concern (referred to as the "home rule" provision). *Caldera*, 341 F. Supp. 3d at 1244. In a home-rule jurisdiction where "a home rule ordinance . . . and a state statute conflict with respect to a local matter, the home rule provision supersedes the conflicting state provision." *City & Cty. of Denver v. State*, 788 P.2d 764, 767 (Colo. 1990) (citation omitted). On the other hand, municipal ordinances that deal with matters of statewide concern and conflict with state law are preempted, unless otherwise authorized by the constitution or state statute. *Id.* Finally, in "matters of mixed local and state concern, a charter or ordinance provision of a home rule municipality may coexist with a state statute as long as there is no conflict, but in the event of a conflict the state statute supersedes the conflicting [ordinance] provision." *Id.*

The determinative issue therefore is whether the challenged provisions of the Boulder City Ordinance regulate matters of purely local or statewide concern, or a mix of both. That issue implicates state, not federal law, and is uncertain under Colorado law.

7

The question, as far as we are aware, has been addressed only one time by Colorado state courts, *see City & Cty. of Denver v. State*, No. 03-CV-3809, 2004 WL 5212983 (Colo. D. Ct., Denver Cty. Nov. 5, 2004). There, the City of Denver had in place several ordinances restricting the sale and use of firearms in Denver city limits. *Id.* at *1. The City sought a declaratory judgment that the ordinances were not preempted by recently passed state statutes that "identif[ied] control of firearms as a state interest,"[3] or alternatively that the Colorado statutes were unconstitutional under the home rule amendment to the extent that they preempt local laws. *Id.* The district court considered each provision individually to determine whether the provision regulated matters of "purely local, purely state or mixed concern," and concluded that several provisions related to matters of purely local concern. *Id.* at *2, *15–17. The State appealed the decision to the Colorado Supreme Court, which split evenly on the issue of whether the ordinances were preempted, thereby affirming the decision of the Denver District Court.[4] *State v. City & Cty. of Denver*, 139 P.3d 635, 636 (Colo. 2006) (3-3 decision, J. Eid not participating).

Plaintiffs maintain that the first *Pullman* factor is not satisfied because the Colorado district court decision in *City & Cty. of Denver* provides certainty in addressing

---

[3] The statutes at issue in *City and County of Denver* were also Colo. Rev. Stat. §§ 29-11.7-102 & 103.

[4] Colorado Appellate Rule 35(b) provides that "[w]hen the supreme court acting en banc is equally divided in an opinion, the judgment being appealed will stand affirmed."

the issue.[5] They contend that "trial court interpretations . . . constitute a ruling on a question of state law that is binding on [the Court]." *City of Houston v. Hill*, 482 U.S. 451, 470 (1987) (quotation marks and citation omitted). In *Hill,* the plaintiff filed a civil rights action after he was arrested several times for violating a city ordinance that proscribed "interrupt[ing] any policeman in the execution of his duty" and he was subsequently acquitted. *Id.* at 454–55. The district court held that the ordinance had not been unconstitutionally applied. When the Court of Appeals declined to abstain and held en banc that the statute was overbroad, *Hill v. City of Houston*, 789 F.2d 1103, 1113 (5th Cir. 1986), the city appealed. The Supreme Court denied abstention under *Pullman* based upon the fact that the Houston Municipal Courts had applied the city ordinance on numerous occasions. *Hill*, 482 U.S. at 469–70. The Court held that the ordinance was overbroad. *Id.* at 467.

Unlike in *Hill*, however, the Colorado Supreme Court previously had occasion to review the issue on appeal here and split evenly in response. *See City & Cty. of Denver*, 139 P.3d at 636. In these circumstances, we agree with the district court that "it is hard to conceive of a more potent way of demonstrating" uncertainty under *Pullman* than "the

---

[5] Plaintiffs also assert that the district court should not have engaged in the *Pullman* analysis without a more thorough factual record in order "to determine the extent of the issues in the case and to frame which issues, if any, require abstention." Aplt. Rep. Br. at 34. We are not persuaded that *Pullman* requires the district court to engage in the examination of state law that it has determined to leave to the state courts. Further, the factual record before the district court was sufficient to establish which issues required abstention in this case and the extent of those issues.

state's highest court split[ting] evenly on a question of law." *Caldera*, 341 F. Supp. 3d at 1245.

The state law issue in this case is not only uncertain but also potentially decisive. The second *Pullman* factor presents "the pivotal question in determining whether abstention is appropriate": is the statute "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Hill*, 482 U.S. at 468 (quotation marks and citation omitted). The answer here is clearly yes: if the state court were to conclude that the Colorado statutes preempt the Boulder ordinance, there would be no need for us to resolve the federal constitutional questions. Plaintiffs do not allege any impediment to bringing their preemption claim in state court. Even if the state court does not hold that each provision of the ordinance is preempted by the statute, its potential determination that some of the provisions are preempted would substantially narrow the scope of the constitutional analysis in federal court. Thus, the second *Pullman* factor is satisfied in this case and weighs in favor of abstention.

The third *Pullman* factor is also satisfied because the case implicates state rights and a decision by this court would risk intrusion into important state functions. In making this determination, we afford deference to the district court's assessment. As we recognized in *Vinyard*;

> The appraisal of whether an erroneous federal court determination of state law would have a disruptive effect on state policies is more discretionary in character than the determination of the clarity of state law, and greater deference will be generally accorded to a district court's appraisal if it is adequately explained.

655 F.2d at 1020 (quotation marks and citation omitted).

10

The Supreme Court has found the third *Pullman* factor to be satisfied where "the dispute in its broad reach involves a question as to whether a city has trespassed on the domain of a State." *City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 172 (1942). In *Fieldcrest Dairies*, milk sellers sued after being denied a permit to sell milk in paper cartons due to a city ordinance which required that milk products sold in quantities less than one gallon be "delivered in standard milk bottles." *Id.* at 169. Subsequently, Illinois passed the Illinois Milk Pasteurization Plant Law, which regulated single service and paper milk containers and "reserve[d] to cities, villages and incorporated towns the power to regulate the distribution . . . of pasteurized milk" so long as the regulation did not violate the act. *Id.* at 170 (internal quotation marks omitted). The Seventh Circuit held that the ordinance's prohibition of single-service containers was void as it violated the public policy of the state expressed in the statute and suggested in dictum that the ordinance was unconstitutional. *Fieldcrest Dairies v. City of Chicago*, 122 F.2d 132, 139

11

(7th Cir. 1941). The Supreme Court reversed on the ground that *Pullman* abstention was required. *Fieldcrest Dairies*, 316 U.S. at 171. The Court reasoned that "Illinois has the final say as to the meaning of the ordinance in question" as well as "the final word on the alleged conflict between the ordinance and the state Act." *Id.* at 171–72. The Court determined that the constitutional issue raised "may not survive the litigation in the state courts" and explained that the wisdom in abstention is that it "avoid[s] the waste of a tentative decision and any needless friction with state policies." *Id.* at 172, 173 (quotation marks and citation omitted). As in *Fieldcrest Dairies*, there is a concern in the present case as to "the appropriate relationship between federal and state authorities functioning as a harmonious whole." *Id.* at 172–73. Indeed, the district court rightly determined that federalism interests are salient in this case. *Caldera*, 341 F. Supp. 3d at 1246.

The deciding court in the present case must balance two competing state policy choices. First, the state legislature has expressed a strong interest in uniform firearm regulation. *See* Colo. Rev. Stat. § 29-11.7-101 (explaining that "[i]nconsistency among local governments of laws regulating the possession and ownership of firearms results in persons being treated differently under the law solely on the basis of where they reside"). On the other hand, the Colorado Constitution grants regulatory power to municipalities under the home rule provision. *See* Colo. Const. art. XX., § 6. We agree with the district court that an "incorrect prediction" as to "the correct interpretation of C.R.S. § 29.11.7-103 and Art. XX, Section 6 of the Colorado constitution will necessarily disrupt an important state interest" in decisively balancing these state policies. *Caldera*,

12

341 F. Supp. 3d at 1246.  Thus, all three *Pullman* factors are satisfied and weigh in favor of abstention in this case.

B.

Because we have determined that all *Pullman* factors are present, we now review the district court's abstention determination for abuse of discretion.  *See Harman*, 380 U.S. at 534; *see also Vinyard*, 655 F. 2d at 1018.  The decision whether to abstain is a "discretionary exercise of a court's equity powers."  *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964).  The consideration of "the nature of the constitutional deprivation alleged and the probable consequences of abstaining" are part of the assessment in determining whether to abstain under *Pullman*.  *Harman*, 380 U.S. at 537.  In deciding whether to abstain, a court considers "the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court."  *Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975).

Plaintiffs argue abstention in this case is improper because it chills the exercise of their fundamental constitutional right to keep and bear arms.[6]  But the Supreme Court has not recognized a categorical rule against abstention in cases involving constitutional rights.  *See Moore v. Sims*, 442 U.S. 415, 434–35 (1979) (ordering abstention in a child-welfare case involving due process rights); *see also Reetz v. Bonzannich*, 397 U.S. 82

---

[6] For the first time at oral argument, plaintiffs also argued that abstention was inappropriate because they are seeking damages under 42 U.S.C. § 1983.  Because "issues may not be raised for the first time at oral argument," we do not consider this argument.  *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010).

13

(1970) (requiring abstention despite Fourteenth Amendment challenge). Moreover, consideration of the nature of the right and the chilling effect of abstention is a secondary assessment to determining whether the *Pullman* requirements are met. *See Harman*, 380 U.S. at 535–37 (assessing the nature of the right and the consequences of abstaining only after determining that the statute was "clear and unambiguous" and therefore did not meet the requirements of *Pullman*).[7]

Plaintiffs also argue that abstention causes a lengthy delay before the constitutional issues are adjudicated and, as a result, they will be deprived of their Second Amendment rights for an extended period. We have recognized that certification is preferable to abstention as a means of avoiding delay. *Kan. Judicial Review*, 519 F.3d at 1119. The district court provided the parties with the option to certify the state law

---

[7] Notably, in each Supreme Court case cited by plaintiffs to support their chilling argument, the Court determined that at least one of the *Pullman* factors was not satisfied. *See Hill*, 482 U.S. at 471 (concluding that the "ordinance is neither ambiguous nor obviously susceptible of a limiting construction"); *Zwickler v. Koota*, 389 U.S. 241, 249 (1967) ("[W]e have here no question of a construction of [the statute] that would avoid or modify the constitutional question.") (quotation marks omitted); *Dombrowski v. Pfister*, 380 U.S. 479, 490–91 (1965) (denying abstention where state law was not uncertain because "the conduct charged in the indictments is not within the reach of an acceptable limiting construction" of the statute, and statutes were invoked in bad faith to discourage civil rights activities); *Harman*, 380 U.S. at 536 (stating that no "provision in the legislation . . . leaves reasonable room for a construction by the [state] courts which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem") (citation omitted); and *Baggett*, 377 U.S. at 375–78 (denying abstention on the grounds that there was not an uncertain issue of state law that "turn[s] upon a choice between one or several alternative meanings of a state statute" but rather "an indefinite number" of interpretations and therefore, a construction of the statute by the state court would not avoid or alter the constitutional issue).

questions to the Colorado Supreme Court, but the parties were unable to reach an agreement to pursue that path. *Caldera*, 341 F. Supp. 3d at 1248. Moreover, the Supreme Court has "regularly ordered abstention" when a case is "pending in state court that will likely resolve the state-law questions underlying the federal claim." *Moore*, 420 U.S at 83. Because there is a case involving substantially identical issues[8] pending in state court, the concern as to delay is mitigated. *See Chambers v. City of Boulder,* No. 2018-CV-30581 (Colo. D. Ct, Boulder Cty. filed June 14, 2018).

Accordingly, we hold that the district court properly abstained as "appropriate regard for the rightful independence of state governments reemphasize[s] that it is a wise and permissible policy for the federal chancellor to stay his hand in absence of an authoritative and controlling determination by the state tribunals." *Fieldcrest Dairies*, 316 U.S. at 172 (quotation marks and citation omitted).

We AFFIRM.

---

[8] The *Chambers* lawsuit raises only state law challenges to the ordinance and does not include the federal constitutional challenges included in this case.

15