**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 19, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

GREG MCWILLIAMS,

    Plaintiff - Appellee,

v.

MICHAEL DINAPOLI, in his
individual capacity,

    Defendant - Appellant,

and

BOARD OF COUNTY
COMMISSIONERS OF BRYAN
COUNTY, OKLAHOMA,

    Defendant.

No. 21-7045

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 6:19-CV-00212-SPS)**
_____

Jeffrey C. Hendrickson (Robert S. Lafferrandre with him on the briefs),
Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City,
Oklahoma, for Defendant-Appellant.

J. Spencer Bryan, Bryan & Terrill Law, Tulsa, Oklahoma, for Plaintiff-
Appellee.

_____

Before **MATHESON**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves a defense of qualified immunity. Under this defense, law-enforcement officers can avoid personal liability when their conduct doesn't violate a clearly established right. Here the asserted right involves the constitutional protection against excessive force.

In addressing this right, the district court concluded that a reasonable factfinder could determine that a law-enforcement officer (Mr. Michael DiNapoli) had punched, tackled, and used a chokehold on Mr. Greg McWilliams. At the time, Mr. McWilliams was suspected only of trespassing on a marina by riding in a golf cart. We're generally bound by the district court's factual determinations, so we ask: Would these factual determinations entail the violation of a clearly established right? We answer *yes*, concluding that

- Mr. McWilliams was suspected of only a minor crime,

- he did not pose a substantial threat to Mr. DiNapoli, and

- Mr. DiNapoli intentionally or recklessly incited Mr. McWilliams.

Mr. DiNapoli also moves to seal sixteen pages of the record. But the common law creates a right of public access to these documents, triggering a heavy burden on Mr. DiNapoli to justify sealing. He hasn't satisfied this burden, so we deny his motion to seal.

2

**1.      The district court denied summary judgment to Mr. DiNapoli, and he appeals.**

Mr. McWilliams sued Mr. DiNapoli under 42 U.S.C. § 1983, alleging excessive force in violation of the Fourth Amendment. In response, Mr. DiNapoli moved for summary judgment, arguing that

- his use of force had been reasonable and

- he was entitled to qualified immunity.

The district court could grant this motion only if Mr. DiNapoli had shown (1) an entitlement to judgment as a matter of law and (2) the absence of a genuine dispute of material fact. *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018).

Applying this standard, the district court denied the motion for summary judgment, concluding that a reasonable factfinder could determine that Mr. DiNapoli had violated Mr. McWilliams's clearly established protection against excessive force.[1] On appeal, Mr. DiNapoli presents three arguments:

1.      A surveillance video blatantly contradicts the district court's factual determination that Mr. McWilliams had not touched Mr. DiNapoli's chest.

2.      Even under the district court's factual determinations, Mr. DiNapoli did not commit a constitutional violation because his use of force was reasonable.

---

[1]      Mr. McWilliams also sued the county's board of commissioners, alleging negligence. The district court denied the board's motion for summary judgment, and the board does not appeal that ruling.

3.    Any constitutional violation would not have been clearly established.

**2.    We lack jurisdiction to review the district court's factual determinations unless they're blatantly contradicted by the record or entail a legal error.**

The threshold issue is appellate jurisdiction. *Cox v. Glanz*, 800 F.3d 1231, 1241 (10th Cir. 2015).

We ordinarily lack jurisdiction to consider a denial of summary judgment because it's not usually considered a final order. *Simpson v. Little*, 16 F.4th 1353, 1359 (10th Cir. 2021). But an exception exists in the collateral-order doctrine. Under this exception, an otherwise non-final order can become appealable if it is "conclusive on the question decided, resolve[s] important questions separate from the merits, and [is] effectively unreviewable if not addressed through an interlocutory appeal." *Id*. (quoting *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020)). A denial of qualified immunity satisfies these conditions and is immediately appealable "to the extent that [the appeal] turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). So we ordinarily defer to the district court's factual determinations and ask only whether those determinations would entail the violation of a clearly established right. *Simpson*, 16 F.4th at 1359–60.

Three exceptions exist, allowing us to revisit the district court's factual determinations if

4

1.    the district court failed to identify the factual disputes,

2.    the record blatantly contradicts the court's factual determinations, or

3.    "the district court commit[ted] *legal* error en route to [the] *factual* determination[s]."

*Id.* at 1360 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1232 (10th Cir. 2013)) (emphasis in original). If one of these exceptions applies, we would conduct de novo review based on the factual record. *Id.*

**3.    The district court concluded that a factfinder could reasonably determine that Mr. DiNapoli had punched, tackled, and choked Mr. McWilliams.**

We thus start with the district court's factual determinations as to the conduct of Mr. McWilliams and Mr. DiNapoli.

The confrontation stemmed from Mr. McWilliams's arrival at a marina in a golf cart driven by Mr. Jay Raborn. When Mr. Raborn and Mr. McWilliams arrived, the manager told them to leave because their use of a golf cart was prohibited. When they refused, the manager called the sheriff's office.

Mr. DiNapoli and a trainee deputy (Mr. Justin Vawter) responded and talked to Mr. McWilliams, Mr. Raborn, and the manager. Based on these conversations, Mr. DiNapoli and Mr. Vawter told Mr. McWilliams and Mr. Raborn to leave. After some discussion, Mr. McWilliams and Mr. Raborn began to back out of their parking spot.

5

As Mr. Raborn started to back out, Mr. DiNapoli grabbed or hit a cigarette out of Mr. McWilliams's hand. Mr. McWilliams stepped out of the cart and yelled at Mr. DiNapoli. While yelling and gesturing, Mr. McWilliams approached Mr. DiNapoli. Mr. DiNapoli took one step back and either told Mr. McWilliams to "get back" or said that he was "in [Mr. DiNapoli's] face."

But Mr. DiNapoli took no other action to separate himself from Mr. McWilliams. Instead, Mr. DiNapoli tilted his head down and hit Mr. McWilliams's nose with the brim of a hat. Mr. DiNapoli then began punching Mr. McWilliams, tackled him, and put him in a chokehold.[2]

**4.    A factfinder could reasonably determine that Mr. McWilliams had not touched Mr. DiNapoli's chest.**

Despite the district court's factual determinations, Mr. DiNapoli insists that he used force only after being pushed or hit in the chest. In support, Mr. DiNapoli and Mr. Vawter testified that Mr. McWilliams had pushed Mr. DiNapoli. But Mr. McWilliams stated under oath that he hadn't touched Mr. DiNapoli. Viewing the evidence in the light most favorable to Mr. McWilliams, the district court concluded that a factfinder could reasonably determine that Mr. McWilliams had not touched Mr. DiNapoli's chest. *See Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 530

---

[2]    Mr. DiNapoli also arrested Mr. McWilliams. But the suit concerns only the use of force prior to the arrest.

6

(10th Cir. 2016) (stating that on summary judgment, the court must credit the non-movant's evidence and view all reasonable inferences favorably to the non-movant).

Mr. DiNapoli challenges this factual determination, arguing that the surveillance video blatantly contradicts Mr. McWilliams's account.[3] In considering this challenge, we can reject the district court's factual determination only if it is "'so utterly discredited by [the record] that no reasonable jury could have believed' it." *Vette v. Sanders*, 989 F.3d 1154, 1164 (10th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

The surveillance video does not "utterly discredit[]" a finding that Mr. McWilliams hadn't touched Mr. DiNapoli's chest. One problem involves distance: The parties appear far from the camera and occupy only a small part of the frame, so it is difficult to see the details.

---

[3]    Mr. DiNapoli also argues that the district court made a legal error. But Mr. DiNapoli doesn't identify any legal error underlying the factual determinations. He instead argues that

- the district court made an "erroneous factual determination" that Mr. McWilliams had not struck Mr. DiNapoli in the chest and

- that factual error led to erroneous legal conclusions.

Appellant's Opening Br. at 17 n.4. Changing the label doesn't turn a factual challenge into a legal challenge.



We see Mr. DiNapoli turn away from the camera. When he does, he partially blocks Mr. McWilliams from view. So we cannot tell from the video whether Mr. McWilliams even raised his arms. *See Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007) (concluding that the plaintiff's account is not blatantly contradicted because the view is obstructed by a vehicle). Because we can't see whether Mr. McWilliams raised his arms, we can't determine whether he touched Mr. DiNapoli's chest. *See Finch v. Rapp*, Case Nos. 20-3132, 20-3190, 2022 WL 2431586, at *5 (10th Cir. July 5, 2022) (to be published) ("In the video, we see [the suspect] raise his hands—but there is nothing that could 'blatantly contradict' the conclusion his actions were nonthreatening." (quoting *Estate of Valverde v. Dodge*, 967 F.3d 1049, 1062 (10th Cir. 2020))); *Vette*, 989 F.3d at 1166 (stating that a photograph of the right side of the plaintiff's face doesn't disprove injuries on the left side of the plaintiff's face); *accord McManemy v. Tierney*, 970 F.3d 1034, 1039 (8th Cir. 2020) (concluding that the

8

plaintiff's account is not blatantly contradicted by a video that's "too grainy to make out what is happening").

Because the video doesn't utterly discredit Mr. McWilliams's account, we're bound by the district court's factual assessment. According to that assessment, a reasonable factfinder could determine that Mr. McWilliams had not touched Mr. DiNapoli's chest.[4]

**5.    Mr. DiNapoli is not entitled to qualified immunity.**

Mr. DiNapoli urges qualified immunity even under the district court's factual determinations. Taking these factual determinations as true, we conduct de novo review of the legal issue, asking:

1.    Do the district court's factual determinations show that Mr. DiNapoli had violated Mr. McWilliams's constitutional right?

2.    Was this constitutional violation clearly established at the time of the confrontation in 2018?

*See McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019). For both questions, we answer *yes*.

---

[4]    Mr. McWilliams asks us to dismiss this appeal for lack of appellate jurisdiction because the video does not blatantly contradict the district court's conclusions on what a factfinder could reasonably determine. But we have jurisdiction to determine whether the video blatantly contradicts the district court's conclusions. *See Leatherwood v. Welker*, 757 F.3d 1115, 1118 n.1 (10th Cir. 2004) (stating that we have jurisdiction to address the defendant's challenge to a factual determination as "blatantly contradicted" by the record); *see also* pp. 4–5, above. And Mr. DiNapoli separately urges qualified immunity under the district court's factual determinations. That argument involves a legal issue, triggering appellate jurisdiction. *See Simpson v. Little*, 16 F.4th 1353, 1359–60 (10th Cir. 2021); *see also* p. 4, above.

**A.      Under the district court's factual determinations, Mr. DiNapoli violated the Fourth Amendment by using excessive force.**

The Fourth Amendment prohibits the use of excessive force when making an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). An officer does not violate the Fourth Amendment if the use of force is objectively reasonable. *Id.* at 397. Objective reasonableness turns on three factors:

1.      whether the suspected crime was serious,

2.      "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and

3.      whether the suspect actively resisted arrest or attempted to flee.

*Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Applying those factors, a reasonable factfinder could determine that Mr. DiNapoli had used excessive force.

**(1)      Mr. McWilliams was not suspected of a serious crime.**

When Mr. DiNapoli used force, the only possible suspicion would involve trespass—a non-violent misdemeanor punishable only by a fine or ten days' incarceration. *See* Okla. Stat. tit. 21, § 1835(A) (trespass punishable by fine of $250), § 1835.7 (recreational trespass punishable by a fine of $250 or up to ten days' imprisonment). This is a minor offense.

Because the suspected offense was minor, this factor would "support[] only the use of minimal force." *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1273 (10th Cir. 2022); *see Alexis v. McDonald's Rests. of*

10

*Mass., Inc.*, 67 F.3d 341, 352–53 (1st Cir. 1995) (stating that this factor heavily supported the claimant because the suspected crime, trespass, was a misdemeanor); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 & n.7 (7th Cir. 2010) (concluding that this factor supported the plaintiff in part because the possible crime of criminal trespass to a dwelling would have been a misdemeanor); *Blackenhorn v. City of Orange*, 485 F.3d 463, 478 (9th Cir. 2007) (concluding that this factor supported the plaintiff because "the severity of the alleged crime, misdemeanor trespass, was minimal, when the only bases for suspecting that [the claimant] was interfering with mall business were his presence at the mall, his previous banishment, his known gang association, and the attention by security that his presence required").

Mr. DiNapoli argues that Mr. McWilliams was suspected of assault and battery of a law enforcement officer, which is a felony. *See* Okla. Stat. tit. 21, § 649(B). But this argument rests on Mr. DiNapoli's account, and the district court concluded that a factfinder could reasonably determine that Mr. McWilliams had not touched Mr. DiNapoli's chest. *See* pp. 6–9, above.

At oral argument, Mr. DiNapoli also urged an assault based on intrusion into his personal space. But Mr. DiNapoli did not make this argument in his opening or reply brief, and we don't ordinarily consider

11

arguments that an appellant initiates in oral argument. *Caldara v. Boulder*, 955 F.3d 1175, 1182 n.6 (10th Cir.), *cert. denied*, 141 S. Ct. 849 (2020).

* * *

Because the suspected offense was minor, the first factor does not support violent force.

### (2) Mr. McWilliams posed only a minimal threat to Mr. DiNapoli.

Mr. DiNapoli insists upon a substantial threat when Mr. McWilliams exited the golf cart, approached, disregarded an order to step back, and yelled. To Mr. DiNapoli, these actions justified force, citing case law that permits the use of force when "a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." Appellant's Opening Br. at 22 (quoting *Mglej v. Gardner*, 974 F.3d 1151, 1168 (10th Cir. 2020)).

But it is unclear whether Mr. DiNapoli ordered Mr. McWilliams to step back or said only that he was too close. *See* p. 15, below. And even if Mr. McWilliams had been told to step back, a factfinder could reasonably find Mr. DiNapoli's response excessive in the absence of any touching or threats. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007); *cf. Waters v. Madson*, 921 F.3d 725, 739–40, 744 (8th Cir. 2019) (concluding that a "light push" was not excessive when a suspect stood within an officer's personal space).

12

At oral argument, Mr. DiNapoli asked us to recognize that force is justified when somebody stands in an officer's personal space because police officers carry dangerous weapons. But Mr. DiNapoli did not make this argument in his briefing, and oral argument was too late to raise this argument. *Caldara v. Boulder*, 955 F.3d 1175, 1182 n.6 (10th Cir.), *cert. denied*, 141 S. Ct. 849 (2020).

Even if Mr. McWilliams' proximity had posed a threat, we'd need to consider the reason that he was standing so close to Mr. DiNapoli. In addressing the reason, the district court correctly pointed to Mr. DiNapoli's role in inciting Mr. McWilliams. That role bears on whether Mr. DiNapoli's "own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Pauly v. White*, 874 F.3d 1197, 1219 (10th Cir. 2017) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)).[5]

A reasonable factfinder could determine that Mr. DiNapoli had deliberately or recklessly incited Mr. McWilliams. Mr. McWilliams was sitting in a golf cart when Mr. DiNapoli grabbed or hit a cigarette out of his hand. Mr. McWilliams approached the officer, but didn't threaten him.

---

[5]    Mr. DiNapoli challenges the validity of this approach, calling it an "open question" before the Supreme Court. But the Supreme Court has declined to resolve this issue, and our own court has held that officers can't justify force based on a confrontation that they deliberately or recklessly provoked. *Pauly*, 874 F.3d at 1219 n.7.

Mr. DiNapoli nonetheless tilted his head down and hit Mr. McWilliams with the brim of a hat. Based on these actions, the district court concluded that a reasonable factfinder could determine that Mr. DiNapoli had tried to incite Mr. McWilliams. So Mr. DiNapoli couldn't use Mr. McWilliams's reaction to justify the use of force.[6]

Mr. DiNapoli asks us to compartmentalize the confrontation into distinct segments, arguing that time passed after he'd grabbed Mr. McWilliams's cigarette or hit it out of his hand. This argument, however, is difficult to reconcile with two of the district court's conclusions on what a factfinder could reasonably determine:

1.    Mr. DiNapoli started using a chokehold less than a minute after he'd grabbed or hit Mr. Williams's cigarette out of his hand.

2.    Mr. DiNapoli had intended to incite Mr. McWilliams and continued to provoke Mr. McWilliams throughout the confrontation.

These determinations would allow the factfinder to attribute a shortage of personal space to Mr. DiNapoli's acts of provocation.

* * *

The second factor does not support violent force because

- Mr. McWilliams posed little or no threat to Mr. DiNapoli and

---

[6]    Mr. DiNapoli denies acting recklessly or intentionally. But he does not provide further argument to support this assertion. We cannot consider an argument when the appellant "makes only conclusory allegations of error" and "offers no argument or authorities in support of [his] position that the district court erred." *Kelley v. City of Albuquerque*, 542 F.3d 802, 819 (10th Cir. 2008).

14

- Mr. DiNapoli's deliberate or reckless conduct caused any possible threat.

**(3)    Mr. McWilliams was not fleeing or resisting arrest.**

The third factor also does not support the use of force. Mr. McWilliams was not fleeing when Mr. DiNapoli punched and tackled Mr. McWilliams and put him in a chokehold. And when Mr. McWilliams was subjected to force, Mr. DiNapoli did not mention an arrest; so Mr. McWilliams was not resisting an arrest.

Mr. DiNapoli argues that Mr. McWilliams was actively resisting because he failed to step back when ordered. We disagree for two reasons.

First, conflicting evidence exists on whether Mr. DiNapoli ordered Mr. McWilliams to step back. The district court determined that Mr. DiNapoli had *either* told Mr. McWilliams to "get back" or had said that Mr. McWilliams was "in [Mr. DiNapoli's] face." Appellant's App'x vol. 3, at 544. On summary judgment, the district court must resolve factual disputes in favor of the non-moving party; so we must assume that Mr. DiNapoli did not order Mr. McWilliams to step back. *See* pp. 6–7, 12, above.

Second, Mr. McWilliams couldn't have been resisting an arrest if he hadn't even been told that he was being arrested. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) (concluding that this factor supported the claimant because he had been grabbed and tackled without

15

being told that he was under arrest). Mr. McWilliams was angry and arguing, but "[n]oncompliance and arguing do not amount to active resistance." *Tatum v. Robinson*, 858 F.3d 544, 549 (8th Cir. 2017); *see also Ciolino v. Gikas*, 861 F.3d 296, 304 (1st Cir. 2017) (stating that this factor supported the claimant, even though he had disobeyed a police order, because he'd shown "no inclination to resist arrest or to attempt to flee"). So Mr. McWilliams' angry reaction did not support the use of force.

**(4)    The force could be excessive even if the injuries had not been severe.**

Mr. DiNapoli argues that even if the three factors had supported Mr. McWilliams, the force wouldn't have been excessive because the injuries to Mr. McWilliams consisted only of minor abrasions. This argument is factually and legally invalid.

The argument is factually invalid because Mr. DiNapoli relies on findings that the district court never made. The court states that after Mr. DiNapoli's punches, tackling, and chokehold, Mr. McWilliams "was taken to a hospital to have his injuries checked and was diagnosed with facial abrasions and abrasions to his arms, then prescribed Neosporin." Appellant's App'x vol. 3, at 546. From this statement, Mr. DiNapoli surmises that "[t]he subtext here is that Plaintiff was *not injured*." Appellant's Opening Br. at 31 (emphasis in original). But the district court never said or implied this "subtext." Nor did the district court state that the

16

record included all information about Mr. McWilliams' injuries. And we generally do not go beyond the district court's factual determinations. *See* p. 4, above.

The argument is also legally invalid because Mr. DiNapoli concedes that the "[p]laintiff need not demonstrate that he suffered a physical injury as a Fourth Amendment prerequisite." Appellant's Opening Br. at 30; *see Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) ("We have consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims."). Despite this concession, we have sometimes considered the extent of a suspect's injuries to determine whether officers used greater force than necessary. For example, in *Pride v. Does*, we noted that (1) the officers were justified in using moderate force and (2) the plaintiff's minor injuries had been consistent with moderate force. 997 F.2d 712, 717 (10th Cir. 1993). But here, the district court's assessment could have prohibited the use of *any* force. So any injury could have suggested the use of excessive force.

\* \* \*

Under the district court's factual determinations, Mr. DiNapoli used excessive force when he punched and tackled Mr. McWilliams and put him in a chokehold.

17

### B.    Mr. DiNapoli's use of force would have violated a clearly established constitutional right.

This alleged use of excessive force would have violated a clearly established right.

We've held that a right is clearly established when a reasonable officer would have recognized the unconstitutionality of the conduct based on existing precedent. *E.g.*, *McCowan v. Morales*, 945 F.3d 1276, 1285–86 (10th Cir. 2019). Despite our holdings, Mr. DiNapoli argues that only Supreme Court opinions can clearly establish a right, citing *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam). *Rivas-Villegas* assumed without deciding that circuit precedent can clearly establish law. *Id.* This assumption conforms to our precedents, which state that our own case law can clearly establish a constitutional right. *E.g.*, *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996). So when the Supreme Court made a similar assumption in *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018), we rejected the argument that Mr. DiNapoli makes here. *See Ullery v. Bradley*, 949 F.3d 1282, 1292 (10th Cir. 2020) (noting that our precedents, other circuits' decisions, and dicta from Supreme Court opinions all showed that circuit precedent can clearly establish rights). We thus consider whether our precedent or Supreme Court caselaw clearly established the constitutional right.

18

Because claims of excessive force turn on the facts surrounding an officer's use of force, the court must specifically define a clearly established right. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). But a right may be clearly established even without "a prior 'case directly on point,' so long as there is existing precedent that places the unconstitutionality of the alleged conduct 'beyond debate.'" *McCowan*, 945 F.3d at 1285 (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

Our opinion in *Casey v. City of Federal Heights* put Mr. DiNapoli on notice that his alleged punches, tackling, and chokehold would have violated the Constitution. 509 F.3d 1278 (10th Cir. 2007). In *Casey*, court staff told the plaintiff not to leave the courthouse with a court file, but he did so anyway. *Id.* at 1279–80. Taking the file might have been a misdemeanor. *Id.* Given the possibility of a misdemeanor, a police officer found the plaintiff in the parking lot and told him to hand over the file and return to his truck. *Id.* at 1280. The plaintiff held out the file, but the officer did not take it. *Id.* The plaintiff responded by walking around the officer to return to the courthouse. *Id.* The officer reacted by putting the plaintiff in an armlock, then jumped on his back. *Id.*

We concluded that the armlock and jumping had constituted excessive force because all of the pertinent factors supported the plaintiff:

19

1.    The plaintiff had been suspected only of a non-violent misdemeanor.

2.    The plaintiff had not posed an immediate threat to anyone's safety.

3.    Though the plaintiff had disregarded an order to stay where he was, he did not actively resist arrest or flee.

*Id.* at 1281–82. We thus concluded that it was clearly established that a reasonable officer "should, at a minimum, have ordered [the plaintiff] to submit to an arrest or used minimal force to grab him while informing him that he was under arrest" before using greater force. *Id.* at 1282.

Our description of the *Casey* plaintiff mirrors the district court's description of Mr. McWilliams. Both individuals

• had been suspected only of non-violent misdemeanors,

• had posed no threat to the officers, and

• had not actively resisted arrest or shown an inclination to flee.

Given these similarities, *Casey* put Mr. DiNapoli on notice that he had to (1) inform Mr. McWilliams that he was under arrest and (2) give him an opportunity to submit peacefully before using more than minimal force. Because we had held that grabbing and tackling the *Casey* plaintiff constituted excessive force, Mr. DiNapoli had notice that punching and tackling Mr. McWilliams and putting him in a chokehold would also have constituted excessive force.

20

Mr. DiNapoli argues that *Casey* is distinguishable, citing three factual differences. But these differences are immaterial.

First, Mr. DiNapoli argues that *Casey* involved a different underlying offense: The plaintiff there was suspected of removing a file from a courthouse, while Mr. McWilliams was suspected of trespassing. But the significance of the offense in *Casey* was its minor, non-violent nature—not the other details of the offense. *Id.* Mr. DiNapoli does not point to anything in *Casey* suggesting that officers could have used force based on suspicion of another offense that was minor and non-violent.

Our later opinion in *McCowan v. Morales* confirms the clarity of *Casey* when the suspected offense is a non-violent misdemeanor. In *McCowan*, we explained that a reasonable officer in 2015 would have known of *Casey*'s holding "that it was unreasonable for an officer to use force against a *non-violent misdemeanant* suspect who was not resisting, fleeing, or dangerous." *McCowan v. Morales*, 945 F.3d 1276, 1288 (10th Cir. 2019) (emphasis added). So a reasonable officer in 2018 would have understood the constitutional prohibition against using force when the underlying offense was minor and non-violent.

Second, Mr. DiNapoli argues that he used less force than the officers in *Casey* had used. For this argument, Mr. DiNapoli points to a separate claim in *Casey* against an officer using a taser. But before the arrival of that officer, the first officer had "grabbed and then tackled [the plaintiff]

21

without ever telling him that he was under arrest" or giving the plaintiff an opportunity to submit to arrest. *Casey*, 509 F.3d at 1282. We held that a factfinder could reasonably find excessive force when the plaintiff was grabbed and tackled by the first officer. *Id.* at 1283. So Mr. DiNapoli was on notice that the Constitution prohibited punching and tackling Mr. McWilliams and putting him in a chokehold (even though a taser wasn't used).

Third, Mr. DiNapoli observes that

- the *Casey* plaintiff was just trying to return a file to the courthouse when he was confronted by a police officer and

- Mr. McWilliams stood too close and refused to step back.

But this distinction rests on Mr. DiNapoli's version of events, not the district court's factual determinations. The court determined that Mr. DiNapoli had either said to step back *or* said that Mr. McWilliams was too close. *See* pp. 12, 15, above. And the district court found that Mr. DiNapoli had continued to advance toward Mr. McWilliams after hitting him with a hat. Appellant's App'x vol. 3, at 545.

Though *Casey* rendered a constitutional violation clear, Mr. DiNapoli points to *Heard v. Dulayev*, 29 F.4th 1195 (10th Cir. 2022). There we reversed a denial of qualified immunity, holding that *Casey* had not put the officer on notice that use of a taser would have been excessive. *Id.* at 1205.

22

For two reasons, however, *Heard* confirms the unlawfulness of Mr. DiNapoli's actions.

First, the *Heard* plaintiff had been suspected of a violent crime (involvement in a fight) rather than a nonviolent misdemeanor. *Id.* at 1199.

Second, we noted that the *Heard* officer had clearly instructed the plaintiff to come out of the bushes on hands and knees, had warned him that disobedience would result in tasing, and had told him to stop. *Id.* at 1205. We determined that the plaintiff had understood these instructions. *Id.* So *Heard* emphasizes the importance of a clear warning or command to step back and submit to arrest. And a reasonable factfinder could conclude that Mr. DiNapoli had not provided a similar warning or command.

* * *

Under *Casey*, officers must give a warning or a chance to submit to arrest before using violent force against suspected misdemeanants who are not violent, aggressive, or fleeing. So any officer in Mr. DiNapoli's situation should have known that punching and tackling Mr. McWilliams and using a chokehold, without a warning, would have violated the Constitution. We thus affirm the denial of qualified immunity.[7]

---

[7]    Mr. McWilliams also contends that he was entitled to make a citizen's arrest of Mr. DiNapoli for assault and battery. We need not address this contention.

23

**6.    We deny Mr. DiNapoli's motion to seal part of the record.**

Mr. DiNapoli also seeks leave to seal sixteen pages of the record. We ordered him to (1) provide justification for sealing the pages and (2) explain why redactions would not suffice. In response, Mr. DiNapoli argued that state law requires us to seal the records. We disagree and deny this motion.

**A.    Mr. DiNapoli has not shown a need to seal the records.**

There is a longstanding common-law right of public access to judicial records. *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013).[8] This right "is fundamental to the democratic state" and preserves "the integrity of the law enforcement and judicial processes" by allowing the public to see how courts make their decisions. *United States v. Bacon*, 950 F.3d 1286, 1297 (10th Cir. 2020) (first quoting *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980), and then quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)). The right of access

---

[8]    Some circuits have also held that the First Amendment provides the public with a qualified right to access some documents filed in civil cases. *See Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 22–23 (2d Cir. 1984); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067–71 (3d Cir. 1984); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177–81 (6th Cir. 1983); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308–10 (7th Cir. 1984); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020). Because the common-law right of access requires disclosure of the documents that Mr. DiNapoli seeks to seal, we need not consider the possibility of a constitutional foundation for the right of access.

24

is not absolute, but the party seeking to seal a judicial record must show "some significant interest that outweighs" the public interest in access to the records. *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)). This burden is "heavy," and sealing is appropriate only when the interest in confidentiality is "real and substantial." *Id.*; *see* 10th Cir. R. 25.6(A)(3) (requiring the movant to "articulate a substantial interest that justifies depriving the public of access to the document"); *Brown v. Flowers*, 974 F.3d 1178, 1187–88 (10th Cir. 2020) ("We will not permanently seal any documents unless [the movant] 'overcomes a presumption in favor of access to judicial records by articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.'" (quoting *Sacchi v. IHC Health Servs., Inc.*, 918 F.3d 1155, 1160 (10th Cir. 2019) (second alteration in original) (internal quotation marks omitted)).

Mr. McWilliams does not oppose the motion to seal. But the right of access protects the public, not just the parties. So we independently decide whether sealing is appropriate even when no party objects. *See, e.g.*, *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 904–05 (10th Cir. 2017) (denying a joint motion to seal); *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241–42 (10th Cir. 2012) (denying unopposed motions to seal).

25

Mr. DiNapoli seeks to seal two sets of documents in volume 4 of his appendix:

- twelve pages of an Oklahoma State Bureau of Investigation (OSBI) file, Appellant's App'x vol. 4, at 594–95, 600–609, and

- four pages about the sheriff's office's internal investigation of Mr. DiNapoli, *id.* at 596–99.

When we asked Mr. DiNapoli to show a substantial interest justifying the sealing, he argued that Oklahoma law requires us to seal the records. For this argument, Mr. DiNapoli relied solely on his interest in complying with state law; he does not argue that anybody would be harmed by the disclosure of these records.

Mr. DiNapoli's motion assumes that a federal court must seal information if it is confidential under state law. For the sake of argument, let's credit this assumption. Even with this assumption, Mr. DiNapoli has not shown that these pages are still considered confidential under Oklahoma law because (1) the OSBI has apparently waived its interest in the confidentiality of its records and (2) Oklahoma law does not restrict the disclosure of the sheriff's office records.

*The OSBI Records.* In seeking to seal the OSBI records, Mr. DiNapoli relies on Okla. Stat. tit. 74, § 150.5(D). Section 150.5(D) requires confidentiality of all "records relating to any investigation being conducted by the [OSBI]." But Oklahoma law likely allows the OSBI to waive the

26

confidentiality of its records through unprivileged disclosure, and the records here have been disclosed to the litigants and the court.

Section 150.5(D) likely allows the OSBI to waive its protections. Although the Oklahoma Supreme Court has not addressed this issue, an intermediate appellate court has held that the OSBI waives confidentiality by voluntarily making an unprivileged disclosure of its investigatory report. *Miller v. Ameristate Bank of Atoka, Inc.*, 314 P.3d 278, 283 (Okla. Civ. App. 2013). In the absence of "convincing evidence" that the highest court would decide otherwise, we will follow a state intermediate court's interpretation of state law. *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1282 (10th Cir. 2011). We see no such convincing evidence here, so we follow the Oklahoma intermediate appellate court's conclusion that the OSBI can waive confidentiality through unprivileged disclosures.

The OSBI records have been provided to all parties, the district court, and us. And the parties have freely cited these records to make arguments. For example, in his publicly filed brief, Mr. DiNapoli refers to the OSBI's record of statements by Mr. McWilliams, Mr. DiNapoli, Mr. Vawter, and the managing general partner of the marina (Jerry Current). Appellant's App'x vol. 1, at 67–71; *see id.* vol. 4, at 600–609. And in a publicly filed brief in district court, the county argued that Mr. DiNapoli had admitted swiping away Mr. McWilliams's cigarette after telling the

OSBI that he hadn't done that. Appellee's Supp. App'x at 18. The district court also relied in its ruling, which was accessible to the public, on Mr. DiNapoli's interview with the OSBI. Appellant's App'x vol. 3, at 544.

The OSBI report contains other information that would apparently be accessible to the public. An example is a resolution by the Board of County Commissioners, which permits golf carts on some roads. In his publicly filed brief for summary judgment, Mr. DiNapoli described this resolution and said that it was in the OSBI file. But he does not say in his motion to seal how a county board's resolution, permitting golf carts on particular roads, could be confidential just because the OSBI had put the resolution in its file.

Given the public accessibility of some documents, the unprivileged disclosure of the contents, and the relevance of the report to the litigation, Mr. DiNapoli hasn't shown how the OSBI's investigatory report could retain its confidential status. *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1038 n.1 (10th Cir. 2022) (concluding that parts of an OSBI report could not be sealed when they were "highly relevant" to the litigation and had been "discussed elsewhere in unsealed ports of the record and even the parties' briefs").

*The Sheriff's Office Records.* Mr. DiNapoli also requests sealing of sheriff's office records on grounds that they fall within an exception to the Oklahoma Open Records Act. This exception allows a public body to "keep

personnel records confidential" if they "relate to internal personnel investigations . . . for . . . demotion, discipline, or resignation." Okla. Stat. tit. 51, § 24A.7(A)(1). In invoking this exception, Mr. DiNapoli argues that

- this exception applies because the records relate to the office's internal investigation as to the use of force and

- the sheriff's office has indicated its desire to assert this exemption by including a boilerplate confidentiality legend on the bottom of the documents.[9]

This argument is foreclosed by two aspects of the Oklahoma Open Records Act. First, the Act *allows* a public body to treat personnel records as confidential, but doesn't *require* confidentiality. Okla. Stat. tit. 51, § 24A.7(A); *see Ross v. City of Owasso*, 389 P.3d 396, 397 (Okla. Civ. App. 2016) (concluding that a personnel record "may be subject to discretionary release pursuant to the provisions of 51 O.S. Supp. 2014, § 24A.7(A)"). Second, the Act states that it "shall not create, directly or indirectly, any rights of privacy or any remedies for violation of any rights of privacy." Okla. Stat. tit. 51, § 24A.2. The Act thus doesn't entitle Mr. DiNapoli to prevent public disclosure of the relevant pages of the sheriff's office records.

---

[9]    The bottom of each page of the report says: "This report is property of the Bryan County Sheriff's Office. Neither it nor its contents may be disseminated outside the agency to which it is loaned." Appellant's App'x vol. 4, at 596–99.

29

In both ways, the Act governs only whether and how a record should be released in response to a request under the Open Records Act, not whether those records must otherwise remain confidential. The Act thus doesn't justify sealing. *See MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669 (D.C. Cir. 2017) (concluding that a federal statute, which rendered documents submitted to a federal agency as confidential, did not justify sealing because the statute did not mention the courts).

**B.     Some sensitive personal information in the sixteen pages can be redacted prior to public filing.**

If the records do reveal any witnesses' sensitive personal information—such as a home address, phone number, date of birth, or Social Security number—Mr. DiNapoli may make limited redactions to protect this information. But the rest of the record must be filed publicly.

**7.     Conclusion**

The district court correctly concluded that a reasonable factfinder could determine that Mr. DiNapoli had violated Mr. McWilliams's clearly established constitutional right. We thus affirm the denial of summary judgment.

In the motion to seal, Mr. DiNapoli doesn't overcome the public's interest in access to court records. So we deny the motion to seal and direct Mr. DiNapoli to publicly file volume 4 of his appendix by August 2, 2022,

making only those redactions that are necessary to protect witnesses'

sensitive personal information.